ATTORNEYS FOR APPELLANT
FOUNDATIONS OF EAST CHICAGO, INC.
Peter J. Rusthoven
Mark J. Crandley
Deborah Pollack-Milgate
Paul L. Jefferson
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
SAINT STANISLAUS CHURCH AND SCHOOL,
THE TWIN CITY MINISTERIAL ALLIANCE, AND
THE NORTHWEST INDIANA FEDERATION,
F/K/A INTERFAITH FEDERATION
Kathleen A. DeLaney
Amanda Couture
Indianapolis, Indiana

NEIGHBORS INCORPORATED OF HAMMOND,
INDIANA, ST. CATHERINE HOSPITAL, INC.,
WORKFORCE DEVELOPMENT SERVICES, INC.,
CALUMET COLLEGE OF ST. JOSEPH, INC.,
JANELLE SCOTT, AND
THE HON. WILLIAM H. HUDNUT
Stephen J. Peters
David I. Rubin
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
CITY OF EAST CHICAGO
James A. Knauer
William Bock, III
Steven E. Runyan
Indianapolis, Indiana

STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Heather L. Hagan
Deputy Attorney General
Indianapolis, Indiana

FILED

May 18 2010, 11:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0908-CV-00383

FOUNDATIONS OF EAST CHICAGO, INC.,
SUCCESSOR BY MERGER TO EAST CHICAGO
COMMUNITY DEVELOPMENT FOUNDATION,
INC. AND TWIN CITY EDUCATION
FOUNDATION, INC.,

*Appellant (Plaintiff below),*

v.

CITY OF EAST CHICAGO,

*Appellee (Defendant below),*

and

STATE OF INDIANA,

*Appellee (Intervenor-Defendant below).*

Appeal from the Marion Superior Court, No. 49D13-0705-PL-019348
The Honorable S.K. Reid, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0711-CV-00987

**May 18, 2010**

**Shepard, Chief Justice.**

At the outset of riverboat gambling in this state, the Indiana Gaming Commission issued a license for operation of a boat at East Chicago. It incorporated as a condition of this license the terms of a local economic development agreement between the operator and the City of East Chicago, with the result that certain gaming revenue flowed from the operator to several local entities. During its 2007 session, the Indiana General Assembly enacted a provision declaring that if the license at East Chicago transferred to a new operator (which it has), the City could void its agreement with the former operator.

The present appeal represents a challenge to the constitutionality of the 2007 legislation by certain recipients of the revenue. We conclude that the 2007 provision did not alter in any substantive way the statutory framework under which the Gaming Commission regulates licenses and license conditions, and thus find it unnecessary to rule on its constitutionality.

**Facts and Procedural History**

The original riverboat arrangements had been in place about a decade when a new city administration took office in East Chicago. The city government has been attempting to re-direct the considerable revenue (3.75% of the licensee's adjusted gross gaming revenue) that has been

distributed to four local entities:  the City itself, two non-profit foundations, and a for-profit corporation.  Our decisions in two previous appeals arising out of this effort contain substantial background and details about the resulting struggle.  In City of East Chicago v. East Chicago Second Century, Inc., 908 N.E.2d 611 (Ind. 2009), we largely reinstated various claims the City had lodged against the profit and non-profit corporations receiving funds, and in Zoeller v. East Chicago Second Century, Inc., 904 N.E.2d 213 (Ind. 2009), we reinstated the Attorney General's claims against the for-profit corporation.

In February 2007, as the foregoing suits were working their way through the court system, the two non-profits that were receiving funds (Twin City Education Foundation and East Chicago Community Development Foundation) dissolved themselves and merged their assets into a newly created non-profit called Foundations of East Chicago, Incorporated ("FEC"). (App. at 1918-24.)

About ten weeks later, the Indiana General Assembly passed the state's biennial budget. Tucked into the budget bill as Section 302 was the provision at issue today, a new subsection to Ind. Code § 4-33-6-7 (2008), which reads:

> (c) This subsection applies to an owner's license issued for the City of East Chicago.  If a controlling interests in the owner's license is transferred, the fiscal body of the City of East Chicago may adopt an ordinance voiding any term of the development agreement . . . between:
>    (1) the city; and
>    (2) the person transferring the controlling interest in the owner's license; . . .
> The ordinance may provide for any payments made under the redevelopment agreement, including those held in escrow, to be redirected to the City of East Chicago for use as directed by ordinance of the city fiscal body.

H.E.A. 1001, 115th Gen. Assem., 1st Reg. Sess. (Ind. 2007).  The City subsequently adopted ordinances invoking this enactment, including amending the development agreements to provide that the City receive the casino revenue for distribution rather than FEC.  (See App. at 2057-59.)

FEC filed this action challenging the validity of Section 302 under numerous provisions of the United States and Indiana Constitutions.  The Attorney General intervened to defend the

3

statute's validity. After conducting a bench trial, the trial court entered judgment against FEC, holding that FEC did not have standing to maintain the challenge and rejecting its constitutional arguments.

FEC appealed, and a divided Court of Appeals affirmed in a manner that produced a majority result, but not a majority opinion. Foundations of East Chicago, Inc. v. City of East Chicago, 905 N.E.2d 30 (Ind. Ct. App. 2009). We granted transfer. 919 N.E.2d 550 (Ind. 2009) (table).

## I.    Does FEC Have Standing?

FEC challenges the trial court's ruling that it "lacked standing" to challenge the statutory section at issue. (Appellant's Br. at 1, 14-17.) It urges that the court mistakenly permitted the City to re-litigate standing arguments earlier resolved adverse to the City in a different division of the Marion Superior Court, where Judge Cale Bradford allowed FEC to substitute as a party under Ind. Trial Rule 25 for the two non-profits that had been receiving funds. (Appellant's App. at 14-15.) Thus, FEC submits, "the trial court here usurped the exclusive jurisdiction of its sister Marion Superior Court, improperly engaging in 'appellate review' of a coordinate tribunal's decision." (Appellant's Br. at 15.) It also contends that the court overlooked undisputed evidence of the board-structure changes implemented in forming the merged FEC entity. In any event, the FEC says it has standing to challenge the statute.

The City, by contrast, argues that the litigation earlier before Judge Bradford was largely a dispute over whether the local corporations possessed third-party beneficiary rights that might limit the ability of the actual parties to the local development agreement. It says the procedural decision rendered by Judge Bradford was not a final judgment entitled to any preclusive effect in other cases. (City's Br. at 17-18.)

The City's larger point about FEC's status is one of considerable force. The entity before us today bears scant resemblance in structure to the two non-profit foundations that had been

4

receiving funds in accordance with the license and the local development agreement between the City and the riverboat operator. Whether FEC is entitled to receive funds under the gaming license, as Twin City and ECCDF did, is first and foremost a matter of administrative law for the Indiana Gaming Commission to decide. We deem that to be an open question.

By contrast, whether FEC has a sufficient interest to be a party in the litigation before us is a judicial question to be resolved by reference to the law of standing.

The judicial doctrine of standing focuses on whether the complaining party is the proper party to invoke the court's power. State ex rel. Cittadine v. Indiana Dept. of Transp., 790 N.E.2d 978 (Ind. 2003). Courts seek to assure that litigation will be actively and vigorously contested. Schloss v. City of Indianapolis, 553 N.E.2d 1204 (Ind. 1990). It is generally insufficient that a plaintiff merely has a general interest common to all members of the public. Terre Haute Gas Corp. v. Johnson, 221 Ind. 499, 45 N.E.2d 484 (1942). Standing requires that a party have "a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue." Higgins v. Hale, 476 N.E.2d 95, 101 (Ind. 1985).

At least for now, FEC is receiving substantial revenue from the casino license and the original local development agreements. The fact that Section 302 has the potential to set in motion events under which the Commission might eliminate that flow of money is sufficient to find standing under these circumstances.

## II.    Does Section 302 Impair FEC's Interests?

As the local corporations argued in the two earlier appeals, FEC contends that Section 302 directly impairs contract rights it possesses as a beneficiary of the agreements the City and the operator tendered to the Gaming Commission. (Appellant's Br. at 17-18.) Specifically, FEC contends that the section "directly and purposely authorizes the City to *eliminate* the Foundations' contract rights." (Appellant's Br. at 18.) The Attorney General and the City both

argue, however, that Section 302 does not substantially impair any such interests because FEC had no reasonable expectation that its ability to receive riverboat revenue would continue indefinitely. (State's Br. at 10; City's Br. at 2.)

Standard judicial practice clothes every statute with a presumption of constitutionality. Boehm v. Town of St. John, 675 N.E.2d 318 (Ind. 1996). The party challenging the constitutionality of a statute bears the burden of proof, and all doubts are resolved against that party. Id. If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose the path which permits upholding the statute. Id.

The legislature enacted the Riverboat Gambling Act, Ind. Code § 4-33-1-1 et seq. (2008), intending that the gambling industry would benefit the people of Indiana by promoting tourism and economic development, subject to "the strict regulation of facilities, persons, associations and gambling operations." Ind. Code § 4-33-1-2. After the decisions by the trial court and the Court of Appeals in this case, we had occasion to analyze the structure and operation of the Act and the East Chicago local development agreements. The decisions in those two appeals largely drive the resolution of the present case.

### A. What Was the Nature of the LDA?

In our earlier cases, we considered the regulatory scheme as it stood before Section 302 was added. In Zoeller v. East Chicago Second Century, Inc., we concluded that the funding arrangements memorialized in the local development agreements and incorporated into the riverboat license have always been subject to alteration, through the administrative processes of the Gaming Commission. Speaking specifically to the local economic development agreements, we said:

> [T]he agreement is not like an ordinary commercial contract at all. This agreement was a mode of implementing the casino's obligation to contribute to local economic development. Its terms were intended to control the rights and duties of East Chicago and the casino licensee in relation to each other; they were not intended to control the rights of any non-parties.

6

Zoeller, 904 N.E.2d at 221. We also observed that gaming revenue flows, ultimately, as a result of decisions made by the Indiana Gaming Commission in the course of issuing, transferring, or revoking a license:

> The Commission's role in these events is a central one. Indiana's Riverboat Gambling Act provides: "A license to operate an excursion gaming boat: (1) is a revocable privilege granted by the state . . ." . . . The Code also provides that any sale or transfer of a license is subject to the approval by the Gaming Commission, requires that a proposed acquirer must meet the same criteria applicable to any initial applicant, and directs the Commission to adopt rules reflecting the standards applicable to transfers.

East Chicago, 908 N.E.2d at 623. Moreover, we concluded:

> While the Foundations and Second Century are correct that the agreements imbedded in the license do not appear terminable at will, the City is correct that they are subject to periodic alteration (through the administrative processes of the Gaming Commission). As the city's motion for summary judgment sought a court order to turn over to the City all funds that Second Century and the Foundations had received and would receive from the riverboat operations, the trial court was warranted in denying the motion.

Id. at 624. Lastly, this Court declared, "the City alone could not redirect gaming revenue presently flowing to the private entities by means of the ordinance it adopted in 2005, or by other means, for that matter." Id. at 623.


### B. Effect of Section 302


In interpreting a statute, our goal is to determine and give effect to the General Assembly's intent. Where the statute is unambiguous, the Court will read words and phrases for their plain and ordinary meaning. Porter Dev., LLC v. First Nat. Bank of Valparaiso, 866 N.E.2d 775 (Ind. 2007). When a statue is clear, courts do not impose other constructions upon it. Huffman v. Office of Envtl. Adjudication, 811 N.E.2d 806 (Ind. 2004).

Viewed in the light of these canons of construction, Section 302 is fairly straightforward. It authorizes the City to make changes to the local agreements which sought to facilitate economic development in East Chicago. The statute says this power may be exercised unilaterally by the City. This idea is obviously at odds with the idea of an "agreement" between the City and the licensees, but it is consistent with our earlier declaration that even without Section 302, the City was "free to change its mind" about how gaming resources might best foster economic development and seek the Gaming Commission's concurrence with its altered plans. The original licensee's successors seem not to have been too concerned about where the 3.75% was deployed, playing something like the role of an interpleader who regards the economic development payments simply as a cost of doing business, while largely content to "leave it to the government" to decide on the best strategy for advancing local economic development.

Section 302 does not by its terms even purport to alter the Commission's regulatory authority. The flow of funds for economic development are subject to any terms and conditions in the license issued by the Commission. The Commission incorporated various arrangements into the East Chicago gaming license on advice of the city government and other stakeholders and interested citizens. They may be revised by the Commission, with or without Section 302.

In light of the foregoing conclusions, we see no impairment of contractual rights presenting a colorable alarm under the applicable state or federal provisions. U.S. CONST. art. I, § 10 and IND. CONST. art. 1, § 24.

### C. Other Constitutional Claims

FEC's challenge to Section 302 covers a considerable list of constitutional provisions, from, bar on taking private property without just compensation (U.S. CONST. amend. V, XIV and IND. CONST. art. 1, § 21), to the requirement that bills be confined to a single subject (IND. CONST. art. IV, § 19), to the constraint on special and local legislation (IND. CONST. art. 4, § 22), to the separation of powers principle (IND. CONST. art. III, § 1). (Appellant's Br. at 16-37.) A

number of these may be plausible. Still, we avoid constitutional declarations when a dispute can be resolved through non-constitutional means. <u>Superior Const. Co. v. Carr</u>, 564 N.E.2d 281 (Ind. 1990). For all that appears, Section 302 did not alter the legal options of the combating parties in any substantial way, and we thus conclude that a constitutional declaration is unwarranted.

**Conclusion**

We reverse the trial court's holding on FEC's standing, but otherwise affirm the judgment.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.