**The BOARD OF COMMISSIONERS IN COUNTY OF ALLEN, Commissioner Linda K. Bloom, Commissioner, William Brown, Commissioner, and F. Nelson Peters, in their official capacities, Appellants–Defendants,**

v.

**NORTHEASTERN INDIANA BUILDING TRADES COUNCIL, Kent L. Prosser, Mark Jarrell, Gregory Stoller, and Michael Kinder & Sons, Inc., Appellees–Plaintiffs.**

No. 02A03–1009–PL–534.

Court of Appeals of Indiana.

June 15, 2011.

Publication Ordered Aug. 29, 2011.

Transfer Denied Oct. 31, 2011.

Carrie H. Gutman, Hawk, Haynie, Kammeyer & Chickedantz, LLP, Fort Wayne, IN, Attorney for Appellants.

Donald D. Schwartz, Arnold & Kadjan, Chicago, IL, Alan Verplanck, Eilbacher Fletcher, Fort Wayne, IN, Attorneys for Appellees.

A. Jack Finklea, Scopelitis, Garvin, Light, Hanson & Feary, P.C., Indianapolis, IN, Attorney for Amicus Curiae Associated Builders and Contractors Indiana Chapter Inc.

Todd A. Richardson, Joseph P. Rompala, Lewis & Kappes, P.C., Indianapolis, IN, Attorneys for Amicus Curiae Indiana Building Contractors Alliance.

Neil E. Gath, Geoffrey S. Lohman, Fillenwarth, Dennerline, Groth & Towe, LLP, Indianapolis, IN, Attorneys for Amicus Curiae Indiana State Building and Construction Trades Council.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

In April 2009, the Board of Commissioners of Allen County ("Commissioners") met and determined the common construction wages for the renovation of the Keystone Building, an Allen County public work project. In response, the Northeastern Indiana Building Trades Council ("Trades Council"), Kent Prosser, Mark Jarrell, Gregory Stoller, and Michael Kinder & Sons, Inc. (collectively, "Appellees") brought this action for judicial review.[1] The trial court granted summary judgment in favor of the Appellees and set aside the Commissioners' common wage determination. The Commissioners appeal and raise three issues, which we reorder and restate as: 1) whether the Appellees have standing to pursue this action; 2) whether the trial court had subject matter jurisdiction to review the Commissioners' common wage determination; and 3) whether the trial court correctly determined that the Commissioners' common wage determination was not supported by substantial evidence. We conclude the Trades Council has associational standing to sue on behalf of the affected members of its constituent unions, the trial court had subject matter jurisdiction, and the Commissioners' common wage determination was not supported by substantial evidence. Accordingly, we affirm the trial court's judgment.[2]

### Facts and Procedural History

On February 10, 2009, a wage committee was appointed to determine the common construction wages to be paid for the Keystone Building renovation project ("Keystone Project"). The Keystone Project is an Allen County public work subject to the common construction wage statute, Indiana Code chapter 5–16–7. Due to a conflict of interest by one wage committee member, the wage committee was subsequently reconstituted. On March 23, 2009, the wage committee met and considered wage scales proposed by the Indiana Department of Workforce Development, the Trades Council, and Associated Builders and Contractors, Indiana Chapter, Inc. ("ABC").[3] The committee reached a tie vote, with two members voting to adopt the Trades Council's proposed wage scale, two members voting to adopt the ABC wage scale, and the other member abstaining. As a result of the deadlocked vote, responsibility for the common wage determination passed to the Commissioners as the "awarding agency" pursuant to Indiana Code section 5–16–7–1(g).

On April 3, 2009, two of the three Commissioners, Commissioner F. Nelson Peters and Commissioner Linda K. Bloom, met as the awarding agency. The Commissioners received information from Ken Neumeister, a representative of ABC, and from Michael Avila, representing the Trades Council. The Commissioners also received the transcript and exhibits from the March 23, 2009 wage committee meeting. At the conclusion of the April 3 meeting, the Commissioners voted to adopt the wage scale proposed by ABC as the common construction wages for the Keystone Project.

---

1. Michael Avila was a plaintiff in the Appellees' original complaint, but their amended complaint dropped Avila and added Jarrell as a plaintiff. The caption to the trial court's appealed order lists Jarrell, not Avila, as a plaintiff. Jarrell is therefore the proper party on appeal, see Ind. Appellate Rule 17(A), and we caption the case accordingly.

2. By separate order, we have denied the Commissioners' motion for oral argument.

3. The Trades Council is an association of labor organizations based in Allen County. ABC is the local chapter of Associated Builders and Contractors, Inc., a national association of non-union construction businesses.

On April 15, 2009, the Appellees filed their amended complaint, alleging that the Commissioners' common wage determination was arbitrary and capricious given "the lack of any evidence substantiating that the ABC wage scale represented the mode wages paid in Allen County" and requesting, among other relief, that the Commissioners' decision be voided and set aside. Appellants' Appendix at 49. The Commissioners filed motions to dismiss, arguing that the trial court lacked subject matter jurisdiction to review the Commissioners' common wage determination and that the Appellees lacked standing to bring the action. The trial court denied both motions to dismiss. The Appellees and the Commissioners filed cross-motions for summary judgment, and ABC was granted permission to file an amicus curiae brief. Following a hearing, the trial court issued its order granting summary judgment to the Appellees and setting aside the Commissioners' common wage determination.[4] As the basis for setting aside the Commissioners' decision, the trial court held the decision was "unsupported by substantial evidence." *Id.* at 19. The Commissioners now appeal. Additional facts will be supplied as appropriate.

### Discussion and Decision [5]

Indiana's common construction wage statute provides that any entity awarded a contract for the construction of a public work, as well as any subcontractor, "shall pay for each class of work ... on the project a scale of wages that may not be less than the common construction wage." [6] Ind.Code § 5–16–7–1(a). The awarding agency, in this case the Commissioners, is required to compose a five-person committee for the purpose of ascertaining the common construction wage.[7] Ind.Code § 5–16–7–1(b). As soon as appointed, the committee shall meet and classify the labor to be employed in the project as skilled, semiskilled, and unskilled and determine the hourly wage to be paid for each class. Ind.Code § 5–16–7–1(c). "The rate of wages determined ... shall not be less than the common construction wage for each of the three (3) classes of wages ... that are currently being paid in the county where the project is located." Ind.Code § 5–16–7–1(d); *see also* Ind.Code § 5–16–7–4(1) (defining "common construction wage" as "a scale of wages for each class of work described in section 1(c)(1) of this chapter that is not less than the common construction wage of all construction wages being paid in the county where a project is located"). The committee shall make and file its common wage determination with the awarding agency at least two weeks prior to the date fixed for letting of the contract. Ind.Code § 5–16–7–1(f). If, as occurred here, the committee fails to meet this deadline, "the awarding agency

4. The trial court also granted the Appellees' motion to strike the Trial Rule 56 affidavits of Commissioners Peters and Bloom, concluding that it would consider only the administrative record generated before the filing of this action. The Commissioners do not challenge this ruling.

5. Amicus curiae briefs have been filed by ABC in support of the Commissioners' appeal and by Indiana Building Contractors Alliance ("IBCA") in support of the Appellees. Neither ABC nor IBCA raises its own issue or argument, and while we have found their presentations helpful to our consideration of this appeal, we limit our discussion to the arguments made by the Commissioners.

6. The statute does not apply to projects in which the actual construction costs less than $150,000. Ind.Code § 5–16–7–1(k).

7. The committee is composed of one person representing labor, one person representing industry, one person named by the Governor, one taxpayer who resides in the county where the project is located and is named by the project owner, and another such taxpayer named by the county legislative body. Ind. Code § 5–16–7–1(b).

shall make the determination, and its finding shall be final." Ind.Code § 5–16–7–1(g).

## I. Appellees' Standing

■ The Commissioners raise the threshold issue of whether the Appellees lack standing to pursue this judicial review action. In response, the Appellees argue they have both associational and public standing. The trial court resolved the standing issue in the Appellees' favor in denying the Commissioners' motion to dismiss. When reviewing the grant or denial of a motion to dismiss for lack of standing under Trial Rule 12(B)(6), we must take the allegations of the complaint as true, we are presented with a pure question of law, and our standard of review is de novo. *State ex rel. Steinke v. Coriden*, 831 N.E.2d 751, 754 (Ind.Ct.App.2005), *trans. denied.* If, however, affidavits or other materials are attached to the motion to dismiss, it is treated as a motion for summary judgment under Trial Rule 56. *Thomas v. Blackford County Area Bd. of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009). Here, while the trial court reviewed the Commissioners' motion using the Rule 12(B)(6) standard, the Commissioners did attach and refer to two exhibits in their motion, and therefore it is properly reviewable under the summary judgment standard.

■ We find associational standing to be the most helpful lens for analysis, and thus address whether the Appellees have associational standing to sue on behalf of their members. The Indiana doctrine of standing "focuses on whether the complaining party is the proper party to invoke the court's power. Courts seek to assure that litigation will be actively and vigorously contested." *Foundations of E. Chicago, Inc. v. City of E. Chicago*, 927 N.E.2d 900, 903 (Ind.2010) (citation omitted). This court has held an association has standing on behalf of its members if it

can satisfy a three-part test articulated by the United States Supreme Court and adopted by a number of other states. *Save the Valley, Inc. v. Indiana–Kentucky Elec. Corp.*, 820 N.E.2d 677 (Ind.Ct.App. 2005) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)), *aff'd on reh'g*, 824 N.E.2d 776, *trans. denied.* The three requirements are: 1) the association's members would otherwise have standing to sue in their own right; 2) the interests the association seeks to protect are germane to its purpose; and 3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. *Id.* at 680.

Turning to the relevant facts, it is undisputed that the Trades Council "is an association of labor organizations representing union craftworkers who work for union employers in Allen County." Appellants' App. at 38. Prosser is President of the Trades Council. Jarrell "is a business agent and member of Laborers Local 213, a member union of the Trades Council, and resides in Allen County." *Id.* Stoller is a member of Bricklayers Local 4, resides in Allen County, has worked on common wage projects in Allen County in the past, and alleged an interest in working on the Keystone Project. Michael Kinder & Sons, Inc. ("Kinder") is a signatory employer with Carpenters Local 232 and Laborers Local 213 and operates predominately in Allen County. Kinder has contracted for common wage projects in Allen County in the past and alleged it "would bid on the Keystone project if the Commissioners had adopted the Trades Council's wage scale." *Id.* However, an exhibit attached to the Commissioners' motion to dismiss shows Kinder did bid on the Keystone Project even though the Commissioners adopted the ABC wage scale, and did so utilizing largely non-union subcontractors.

In their complaint, the Appellees alleged the Trades Council has standing to sue on behalf of its constituent unions' members, who "are likely to not be employed on the Keystone project because of the actions of" the Commissioners. *Id.* Prosser and Jarrell likewise claimed standing to "represent union members who are likely not to be employed on the Keystone project because of" the Commissioners' decision. *Id.* Kinder claimed standing to sue in its own right because, relative to its ability to bid on the Keystone Project, it "has suffered economic damages" from the Commissioners' adoption of a wage scale that pays lower than union wages. *Id.* at 39. Finally, Prosser claimed standing in his own right "because it is likely he will not be employed on the Keystone project because of" the Commissioners' decision. *Id.* at 38.

As for the first element of associational standing, it is undisputed that the wage scale adopted by the Commissioners pays lower than union wages, which are set by multi-employer collective bargaining agreements. As a result, union employers are at a competitive disadvantage relative to non-union employers bidding on the Keystone Project because only the union employers will have to pay wages higher than the Commissioners' wage scale. Because the union employers—both contractors and subcontractors—are disadvantaged in the bidding process, union workers are less likely to be employed on the Keystone Project. At least some union workers—members of the unions that compose the Trades Council, and members represented by Prosser and Jarrell—are thereby adversely affected by the Commissioners' decision. As such, those union members would have standing to sue in their own right. *See Save the Valley*, 820 N.E.2d at 682 (concluding individual members would have standing because they would be "adversely affected" by grant of landfill permit); *cf. State ex rel. Cittadine v. Ind. Dep't of Transp.*,

790 N.E.2d 978, 979 (Ind.2003) (stating that under general standing doctrine, persons must "show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct"). Therefore, the Trades Council, Prosser, and Jarrell satisfy the first element of associational standing.

Turning to the second element, the interests the Trades Council seeks to protect—the proper setting of a wage scale for the Keystone Project so as to ensure work opportunities for union members—are germane to the Trades Council's purpose. The Commissioners do not dispute this point. Prosser and Jarrell in their capacities as union representatives seek to protect the same interests, which are likewise germane to the unions' purposes. The common construction wage statute contemplates that construction trades unions have a strong interest in the setting of wage scales for public projects, as the statute requires a wage committee to have one member representing labor, appointed by the president of the Indiana AFL–CIO. Ind.Code § 5–16–7–1(b)(1).

Finally, neither the claim asserted nor the relief requested is such as to require participation of individual union members in this lawsuit. The Appellees' claim that the Commissioners acted unlawfully in the adoption of a wage scale does not involve or implicate individual union workers in determining the operative facts. And because the relief sought is prospective and injunctive in nature and does not include an award of money damages, there is no need for individual union workers to provide particularized proof or otherwise participate in fashioning a remedy. *See Save the Valley*, 820 N.E.2d at 682 (concluding third element met because plaintiffs "only sought review of the granting of a permit and not an award of monetary damages,

which would have required individualized proof").

The Commissioners argue that Kinder and Stoller have not shown they will suffer direct harm and that the remaining Appellees' standing is wholly dependent on Stoller's standing to sue in his own right. However, as implied above, the Trades Council can sue in its associational capacity on behalf of any and all of its members and is not limited to representing Stoller as the sole union member named a plaintiff. Even if Kinder and Stoller lack standing in their own right, such a conclusion would not require dismissal of the lawsuit or entitle the Commissioners to judgment in their favor. *See Crawford v. Marion County Election Bd.*, 472 F.3d 949, 951 (7th Cir.2007) (stating that where only injunctive relief is sought, "only one plaintiff with standing is required"), *aff'd*, 553 U.S. 181, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008). Accordingly, we need not determine whether Kinder or Stoller have standing. Likewise we need not address whether Prosser and Jarrell, although they are individuals rather than organizations and thus lack "members" in the usual sense, can establish associational standing on behalf of union workers they represent.

We conclude and find it dispositive that the Trades Council has associational standing to sue on behalf of its constituent unions' members. In light of this conclusion, we need not address whether the Appellees can avail themselves of the doctrine of public standing. We do refer to previous Indiana cases that, while not addressing standing as an appellate issue, were successful declaratory judgment or judicial review actions brought by labor organizations to enjoin unlawful setting of wage scales for public projects. *See Indiana State Bldg. & Constr. Trades Council v. Warsaw Cmty. Sch. Corp.*, 493 N.E.2d 800 (Ind.Ct.App.1986) (reversing and directing judgment in favor of State

Trades Council on its declaratory judgment action); *Bd. of Comm'rs of County of Allen v. Jones*, 457 N.E.2d 580, 583–84, 590 (Ind.Ct.App.1983) (affirming judgment in favor of Allen County labor organizations and Indiana AFL–CIO president that Board's, as opposed to wage committee's, prevailing wage determination was unlawful, null, and void). These cases provide further support for our conclusion that the Trades Council is a proper party to invoke the trial court's power in reviewing disputed common wage determinations.

## II. Subject Matter Jurisdiction

■ The Commissioners argue that the trial court lacked subject matter jurisdiction to review their common wage determination because, pursuant to Indiana Code section 5–16–7–1(g), their decision as the awarding agency was "final." The trial court, in denying the Commissioners' motion to dismiss, concluded it had subject matter jurisdiction. Because the trial court, in reaching this conclusion, ruled on a paper record and the relevant facts were not disputed, we review the trial court's conclusion de novo. *See GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind.2001).

Initially we point out that while Indiana Code chapter 5–16–7 does not by its terms provide for judicial review of common construction wage determinations, the lack of a statutory provision for judicial review is not dispositive. Our supreme court has stated, in regard to administrative action by local government for which the legislature has not provided a right of judicial review, Indiana courts will still "review the proceedings to determine whether procedural requirements have been followed and if there is any substantial evidence to support the finding and order of such a board." *Mann v. City of Terre Haute*, 240 Ind. 245, 249, 163 N.E.2d 577, 579–80 (1960).

In a consistent line of cases, Indiana courts have reviewed decisions of public

project wage committees using such principles of administrative law. *See State ex rel. Cedar Creek Sch. Twp. v. Curtin,* 217 Ind. 190, 194, 26 N.E.2d 909, 911 (1940) (holding, in case governed by predecessor prevailing wage statute, complaint stated sufficient allegations that wage committee acted arbitrarily and capriciously "to warrant the court, upon proof of the allegations, to enter judgment annulling the wage scale filed by" committee); *Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 191–92 (Ind.Ct.App.1998) (holding trial court properly determined wage committee violated common construction wage statute and properly enjoined use of invalid wage scale), *trans. denied; see also Jones,* 457 N.E.2d at 588 (discussing whether, under predecessor prevailing wage statute, wage committee's actions were arbitrary and capricious). As we explained in *City of Jasper v. Collignon,* 789 N.E.2d 80, 87 (Ind.Ct.App.2003), *trans. denied,* while political subdivisions and their common construction wage committees are not administrative agencies subject to the Administrative Orders and Procedures Act, "general administrative law principles" still apply. Thus in *City of Jasper,* this court applied the arbitrary and capricious and substantial evidence standards to review (although we ultimately affirmed) a common construction wage committee's decision.

The Commissioners argue, notwithstanding the above, that Indiana Code section 5–16–7–1(g) prohibits judicial review when the wage committee fails to reach a decision and the awarding agency therefore must make a "final" wage determination. The Commissioners' argument is premised on the plain and ordinary meaning of "final," which they assert means "not to be altered or undone." Brief of Appellants at 8. However, "final" can also mean, as the Commissioners seem to acknowledge, being the last in a series or

process. *See id.* In the context of administrative law, "final" administrative action is a prerequisite, not an impediment, to judicial review. *Shettle v. Meeks,* 465 N.E.2d 1136, 1139 (Ind.Ct.App.1984) ("A primary tenet of Indiana administrative law is that there must be final administrative action before there can be judicial review thereof.") (quotation omitted). In other words, final administrative action is the last step of the administrative process, which must take place prior to judicial review of that process.

Moreover, in interpreting statutes, we look to the statute as a whole to discern the intent of the legislature, avoiding excessive reliance on a selective reading of individual words. *Cooper Indus., LLC v. City of South Bend,* 899 N.E.2d 1274, 1283 (Ind.2009). In context, the provision that the awarding agency's decision shall be "final" differentiates the authority of the awarding agency from that of the wage committee and means the awarding agency's decision may not be revisited by the wage committee. Such language does not unambiguously foreclose judicial review of the completed administrative process, and we can discern no such legislative intent from the statute as a whole. Accordingly, we conclude the trial court had subject matter jurisdiction to review the Commissioners' common wage determination using the same administrative law principles Indiana courts have held applicable to decisions of common construction wage committees.

### III. Substantial Evidence

■ The Commissioners challenge the trial court's conclusion that their common wage determination, wherein they adopted the wage scale proposed by ABC, was not supported by substantial evidence. In reviewing administrative action for substantial evidence, neither the trial court nor this court is to try the facts de novo or substitute its judgment for that of the

administrative body. *Equicor Dev., Inc. v. Westfield–Washington Twp. Plan Comm'n,* 758 N.E.2d 34, 37 (Ind.2001). Where, as here, the trial court ruled solely on a paper record, we review the trial court's decision de novo and owe no deference to its factual findings. *Id.* Moreover, in this appeal from summary judgment, we are not limited to reviewing the trial court's reasons for granting summary judgment, and we may affirm the trial court upon any legal theory which the designated materials support.[8] *Sims v. Barnes,* 689 N.E.2d 734, 735 (Ind.Ct.App. 1997), *trans. denied.*

The statutory definition of "common construction wage" requires the Commissioners to determine a scale of wages for each class of skilled, semiskilled, and unskilled labor "that is not less than the common construction wage of all construction wages being paid in the county where a project is located." Ind.Code § 5–16–7–4(1). This court has interpreted the phrase "common construction wage" to mean "the scale of wages that are most commonly paid in the community," or, in mathematical terms, the "mode" wage. *Union Twp.,* 706 N.E.2d at 192 & n. 7 (holding that averaging is not to be used in determining the common wage); *see also* Appellants' App. at 379 (memorandum from State Board of Tax Commissioners adopting *Union Township* interpretation that the common wage "is the *mode.* It is not the mean or median") (emphasis in original).

With the foregoing in mind, we turn to whether the evidence submitted by ABC and received by the Commissioners supports a finding that ABC's proposed wage scale met the statutory standard of the most common, or mode, construction wage in Allen County. In doing so, we avoid comparing the evidence submitted by ABC with the evidence submitted by the Trades Council, respectful as we must be of the Commissioners' prerogative to weigh competing evidence. *See City of Jasper,* 789 N.E.2d at 86, 93 (stating trial court improperly reweighed the evidence when it found evidence submitted by ABC "insufficient" in comparison with evidence submitted by labor representative).

In support of its proposed wage scale, ABC submitted the results of a wage survey, and a blank copy of the survey, that it sent to its member contractors and other non-union employers.[9] Each responding contractor reported the "common wage that they pay" for various classes of labor and the number of man-hours worked at that wage. Appellants' App. at 283. ABC's representative, Neumeister, conceded he did not know what percentage of Allen County construction jobs the ABC wage scale represented. *Id.* at 187. However, Neumeister testified that roughly 90 percent of contractors in Allen County are non-union. Similarly, J.R. Gaylor, ABC's representative at the March 23, 2009 meeting, stated that "the vast majority of contractors and workers in this county are paid on an independent merit basis, not a collective bargaining number" and that about 30 percent of construction workers in Allen County are union members. *Id.*

---

8. Accordingly, we need not address the parties' respective contentions as to whether the trial court erred when it applied a hearsay residuum rule requiring the Commissioners' common wage determination to be supported in part by non-hearsay evidence.

9. ABC's member contractors number 80 to 100 in Allen County, out of around 1,600 contractors total "in the area." Appellants' App. at 293. While some union contractors may possibly have received the survey, ABC's member contractors were the "main source" for the survey, *id.* at 279, and Neumeister stated union contractors most likely would not have responded to the survey had they received it. *Id.* at 188–89.

at 273–76. Neumeister reasoned, "theoretically, the ABC wage [scale] should be closer to the true common wage of the county" than was the Trades Council's proposed wage scale, which reflected wages paid according to union collective bargaining agreements. *Id.* at 191.

Based on our review of the record, we conclude there was not any substantial evidence to suggest that ABC's proposed wage scale represented the most commonly paid construction wages in Allen County. Rather, the ABC survey only identified the wages most commonly paid by the non-union contractors who participated in the survey, which arguably represented the most common wages for non-union contractors overall. It was undisputed that non-union contractors tend to pay each employee a different wage based upon what each employee is perceived to merit, whereas union contractors pay all employees in a given trade and skill level the same wage based upon multi-employer collective bargaining agreements. *See id.* at 325–26 (discussion between Gaylor and Avila regarding the differing compensation models). Therefore, even though non-union contractors and employees are a majority in Allen County, it cannot be inferred that non-union contractors pay more employees at the most common non-union wage than do union contractors at the most common union wage. Put differently, the Commissioners could not reasonably have found based on the evidence presented that, for each and every trade and skill classification, the non-union contractors surveyed by ABC paid more employees at the same wage than did Allen County union contractors who were not surveyed.[10]

The Commissioners compare this case to *City of Jasper*, 789 N.E.2d 80, where this court reversed a trial court finding that a committee's common wage determination was not supported by substantial evidence. *City of Jasper* does bear similarities to the present case, chiefly ABC's submission and the wage committee's adoption of a wage scale based on a survey of non-union employers and contractors. However, other facts render *City of Jasper* dissimilar, including the following recited by this court in its discussion of the substantial evidence issue: 1) the construction workforce in Dubois County was less unionized than in the State as a whole; 2) ABC's representative stated that its member contractors who completed the survey included "the largest general contractors and the largest subcontractors in this county," *id.* at 90; 3) ABC specifically informed the wage committee that its wage scale "represent[ed] the *most commonly paid construction wages in Dubois County at this time,*" *id.* at 91 (emphasis in original); 4) two committee members testified to their personal knowledge of the local construction industry and personal knowledge that ABC's member contractors included two of the larger contractors in the county; and 5) based on the foregoing, the two committee members voted for ABC's proposed wage scale because they believed ABC's figures accurately reflected the most commonly or frequently paid wages in the county. The present case, by contrast, lacks such specific facts or evidence to support an inference that the information garnered from

---

**10.** The Commissioners come near to conceding this point, stating "[n]either the ABC nor the Appellees could state that their wage scale represented the commonly paid wage for 'all construction wages being paid in the county,' as required by the statute." Br. of Appellants at 16. We note the statute requires a wage committee to consider information supplied by the Department of Workforce Development ("DWD"), *see* Ind.Code § 5–16–7–4(1)(A), and that even if inadequate or incomplete in this case, as the parties seem to agree, DWD-supplied information should serve to bridge the gap between wage information supplied by unions and that supplied by non-union contractors.

ABC's survey represents the most commonly paid wages for all construction work in Allen County.

Consistent with *City of Jasper*, we do not hold that a wage committee acts arbitrarily or capriciously or without sufficient evidence whenever it adopts a wage scale proposed by a non-union trade group such as ABC. We conclude only that substantial evidence was lacking to support such a decision by the Commissioners under the facts of this case.[11] Therefore, the trial court properly set aside the Commissioners' common wage determination as unsupported by substantial evidence, and we affirm its summary judgment.

### Conclusion

The Trades Council has associational standing to sue on behalf of the members of its constituent unions, the trial court had subject matter jurisdiction over the Appellees' complaint for judicial review, and the trial court therefore properly denied the Commissioners' motions to dismiss. The Commissioners' common construction wage determination was not supported by substantial evidence, and as a result, the trial court properly granted summary judgment to the Appellees and set aside the Commissioners' decision. The judgment of the trial court is affirmed.

Affirmed.

RILEY, J., concurs.

BROWN, J., concurs in part and dissents in part with separate opinion.

BROWN, Judge, concurring in part and dissenting in part.

I concur with the majority's determination that the Trades Council has associational standing to sue on behalf of the affected members of its constituent unions, and that the trial court has subject matter jurisdiction. However, I part ways with my colleagues' decision to affirm the trial court's conclusion that the Commissioners' common construction wage determination was not supported by substantial evidence. Specifically, the majority determines that the court properly set aside the Commissioners' determination and granted summary judgment in favor of the Trades Council. I would affirm the Commissioners' determination because I find substantial evidence to support it.

As pointed out by ABC in its amicus curiae brief, it provided an information packet to the Commissioners during the March 23, 2009 meeting. Specifically Gaylor, the ABC representative directly responsible for conducting ABC's common construction wage survey and compiling the results, presented a packet of materials that contained the results of the survey as well as a chart examining union density in the construction industry. The proposed wage scale was based on a return of the survey forms and provided wage scales for all appropriate classes of work.

After this meeting, the Commissioners deadlocked and failed to adopt a wage

---

11. The dissent argues that there was substantial evidence in part because the ABC wage scale was compiled using mode wages and 90 percent of contractors in Allen County are non-union. However, each respondent to the ABC survey indicated only a common wage that *it* paid—i.e. the mode wage for its own operations—not the mode or most common wage county-wide. Moreover, the question is not which wage is paid by the most contrac- tors, but rather which wage is paid to the most workers. If the former were true, then differences in the number of workers employed by large and small contractors would have no effect, contrary to the observations in *City of Jasper* that the wage scale there adopted was supported in part by it reflecting wages paid by the larger contractors in the county.

scale. They held another meeting on April 9, 2009. ABC representative Neumeister explained that the ABC wage survey complied with the requirements that it be current, county specific, inclusive of fringe benefits, broken down into skilled, semi-skilled, and unskilled workers for each trade classification, and calculated using the mode or most commonly paid wage. He also pointed out that ABC's presented wage scale had been adopted by more than eighty wage committees in the year immediately preceding the meetings, and that ninety percent of the contractors in Allen County were non-union.

The foregoing evidence supports the Commission's common construction wage determination. Further, this result is consistent with the result in *City of Jasper v. Collignon*, 789 N.E.2d 80, 92 (Ind.Ct.App. 2003), *trans. denied*, wherein our review of the evidence revealed that a wage committee's determination was rationally based upon Gaylor's presentation and the ABC survey. I would affirm the Commission's determination.

### ORDER

Appellee Northeastern Indiana Building Trades Council, by counsel, has filed a Motion to Publish.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOW:

1. Appellee Northeastern Indiana Building Trades Council's Motion to Publish is GRANTED, and this Court's opinion handed down on June 15, 2011, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

ROBB, C.J., RILEY and BROWN, JJ., concur.