729 S.E.2d 243

**STATE of West Virginia ex rel. the AFFILIATED CONSTRUCTION TRADES FOUNDATION, A Division of the West Virginia State Building and Construction Trades Council, AFL–CIO, Plaintiff Below, Petitioner**

v.

**The Honorable James C. STUCKY, Judge of the Circuit Court of Kanawha County; West Virginia Department of Transportation, Division of Highways; West Virginia Board of Education; Mingo County Redevelopment Authority; and Nicewonder Contracting, Inc., Defendants Below, Respondents.**

No. 11–1690.

Supreme Court of Appeals of West Virginia.

Submitted April 25, 2012.

Decided June 21, 2012.

Vincent Trivelli, Esq., Law Office of Vincent Trivelli, PLLC, Morgantown, WV, for the Petitioner, Affiliated Construction Trades Foundation.

Anthony G. Halkias, Esq. Jeff J. Miller, Esq. Charleston, WV, for Respondent, West Virginia Department of Transportation, Division of Highways.

Forrest H. Roles, Esq., Robert M. Stonestreet, Esq., Dinsmore & Shohl, LLP, Charleston, WV, for Respondent, Nicewonder Contracting, Inc.

Gene W. Bailey, II, Bowles Rice McDavid Graff & Love, Charleston, WV, for Respondent, Mingo County Redevelopment Authority.

PER CURIAM:

The Petitioner, The Affiliated Construction Trades Foundation, ("ACT"), seeks a writ of prohibition barring the circuit court from enforcing its order requiring ACT, in its declaratory judgment suit, to (1) prove by affirmative evidence that it has standing, and (2) add the Federal Highway Administration ("FHWA") as a defendant. For the reasons discussed in this Opinion, we grant the requested writ of prohibition.

## I. Background

In ACT's declaratory judgment action it seeks a declaration that a public highway construction contract awarded to the respondent, Nicewonder Contracting, Inc. ("Nicewonder"), by the respondent West Virginia Department of Transportation, Division of Highways ("DOH"), violated state competitive bidding and prevailing wage laws. It is undisputed that the DOH did not solicit competitive bids for the highway construction contract, and it is undisputed that the contract does not require Nicewonder to pay a prevailing wage.

The circuit court dismissed ACT's declaratory judgment action finding that it lacked standing to challenge the highway construction contract. ACT appealed that dismissal, and on June 22, 2011, we reversed the circuit court, finding that ACT had representative standing to seek the declarations sought in the declaratory judgment action. *See Affiliated Construction Trades Foundation v. West Virginia Department of Transportation*, 227 W.Va. 653, 664, 713 S.E.2d 809, 820 (2011) (hereafter *"ACT I"*).[1] We directed that, on remand, the circuit court was to conduct "further proceeding consistent with [that] Opinion." *Id.*

On remand, ACT filed a motion for summary judgment. Nicewonder argued that ACT's motion should be denied because *ACT I* had not resolved all issues relevant to ACT's standing. Nicewonder also asserted that the FHWA was an indispensable party to the declaratory judgment lawsuit. On November 9, 2011, the circuit court entered an order denying ACT's motion for summary judgment. The circuit court determined that this Court's Opinion in *ACT I* did not completely decide the issue of ACT's standing, and that ACT must join the FHWA as a party-defendant in the action.

ACT now requests a writ of prohibition barring the enforcement of the circuit court's order.

## II. Standard of Review

ACT asserts that the circuit court ignored the mandate of this Court in *ACT I*. "A circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo*." Syllabus Point 4, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 591 S.E.2d 728 (2003). "When a circuit court fails or refuses to obey or give effect to the mandate of this Court, misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition is an appropriate means of enforcing compliance with the mandate." *Id.*, at Syllabus Point 5.

ACT further asserts that the circuit court's finding that the FHWA was an indispensable party was clear legal error which prejudiced it in a way that is not correctable on appeal. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va.Code 53–1–1." Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we explained that

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but

---

1. In *ACT I* we gave a detailed background of the case. Because those facts remain unchanged, we will not fully restate them in this Opinion except as may be necessary for context and clarity.

only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), also provides the following guidance where a court exceeds its legitimate powers:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Utilizing these standards of review, we examine ACT's request for a writ of prohibition.

## III. Discussion

In *ACT I* we concluded that ACT had representative standing to seek a declaration whether state law required the DOH to seek competitive bidding for the highway construction contract, and whether state law required the inclusion of a prevailing wage clause in the highway construction contract. In reaching this conclusion we applied the three elements required for representative standing which we set out in Syllabus Point 4 of *ACT I*:

> An organization has representative standing to sue on behalf of its members when the organization proves that: (1) at least one of its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

■ Initially, to satisfy the first element, the association must allege in its complaint that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). There is no contention that ACT failed to allege standing.

Ultimately, the first element must be proven. An association must prove that its members, *or any one of them,* are suffering *immediate or threatened* injury as a result of the challenged action, and that the injury is of the sort that would have entitled an individual member to themselves bring suit. *See Warth, supra,* 422 U.S. at 511, 95 S.Ct. 2197. *See also, Management Association for Private Photogrammetric Surveyors v. U.S.,* 467 F.Supp.2d 596, 600 (E.D.Va.2006).

Respondents mistakenly argue—an argument the circuit court adopted—that in *ACT I* we did not say, as a matter of law, that ACT had proved standing, or that ACT had proven injury to its union members. They contend that any injury to ACT's members is hypothetical because no contractor employing union members was shown to have an interest in bidding on the highway contract. The circuit court agreed and denied the motion for summary judgment and required ACT to prove standing.

Although we held that ACT has standing, we will review the undisputed facts which establish that ACT has met its burden of proof on standing as a matter of law.

## A. Standing

### 1. *The association members have standing in their own right.*

The first element is satisfied if the association proves that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action[.]" *Warth, supra.* The undisputed facts are (1) the contract was not competitively bid, (2) Nicewonder, who obtained the contract, was the only contractor considered by the DOH, (3) the contract does not require payment of prevailing wages, (4) Nicewonder is a non-union contractor who does not pay prevailing wages, and (5) union contractors who employ union workers were not allowed to bid on the contract.

■ The undisputed facts easily prove the first element of representative standing. Contractors who employ union workers were not allowed to bid on the highway construction contract. The inability to compete for a government contract as a result of improper government action is a cognizable injury in fact and a competitor does not need to prove it would have received the contract. *See Northeastern Florida Contractors v. City of Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); *Price v. City of Charlotte, N.C.*, 93 F.3d 1241 (4th Cir. 1996); and *Management Association for Private Photogrammetric Surveyors, supra* at 602. Consequently, union employees of the union contractors who were not allowed to bid suffered injury or threatened injury because they were not likely to be employed on the highway construction project. Standing is proven because there is a putative improper action and the union workers were less likely to be employed on the highway construction project. They had standing to sue in their own right.

A recent decision by the Court of Appeals of Indiana in *Board of Commissioners in*

*County of Allen v. Northeastern Indiana Building Trades Council*, 954 N.E.2d 937 (Ind.App.2011), is on point. In that case there was a public renovation project dubbed the "Keystone Project." The Trades Council[2] objected to the "common wage" (prevailing wage) to be paid under the contract, and filed suit. The Board of Commissioners moved to dismiss, arguing that the Trades Council lacked standing. The Indiana court applied its standard for representative standing, which mirrors our standard set forth in Syllabus Point 4 of *ACT I*. In addressing the first element—that at least one of the Trade Council's members must have standing in their own right—the court noted that

> *it is undisputed* that the wage scale adopted by the Commissioners pays lower than union wages, which are set by multi-employer collective bargaining agreements. As a result, union employers are at a competitive disadvantage relative to non-union employers bidding on the Keystone Project because only the union employers will have to pay wages higher than the Commissioners' wage scale. Because the union employers—both contractors and subcontractors—are disadvantaged in the bidding process, *union workers are less likely to be employed on the Keystone Project.* At least some union workers— members of the unions that compose the Trades Council [...]—are thereby adversely affected by the Commissioners' decision. As such, those union members would have standing to sue in their own right.

*Board of Commissioners in County of Allen, supra* at 942 (emphasis added).

We agree that union workers are less likely to be employed when improper government action denies union contractors the opportunity to compete on a government a contract.

### 2. *The interest ACT seeks to protect is germane to its purpose.*

■ One of ACT's primary functions is to protect its members by assuring compliance

---

2. The Trades Council "is an association of labor organizations representing union craftworkers who work for union employers in Allen County."

*Board of Commissioners in County of Allen*, 954 N.E.2d at 941.

with our law as it pertains to competitive bidding and prevailing wages. ACT's suit seeking to determine the legality of the highway construction contract is germane to that purpose.[3] The Indiana court, in discussing this element, noted

> the interests the Trades Council seeks to protect—the proper setting of a wage scale for the Keystone Project so as to ensure work opportunities for union members— are germane to the Trades Council's purpose. The Commissioners do not dispute this point.... The common construction wage statute contemplates that construction trades unions have a strong interest in the setting of wage scales for public projects, as the statute requires a wage committee to have one member representing labor, appointed by the president of the Indiana AFL–CIO. Ind.Code § 5–16–7–1(b)(1).

*Id.*, 954 N.E.2d at 942. Our law regarding the setting of prevailing wages for public construction projects envisions that labor unions will have a strong interest in setting the applicable rates. *See, e.g.*, *W.Va.Code*, § 21–5A–5 ("In determining such prevailing rates, the department of labor may ascertain and consider the applicable wage rates *established by collective bargaining agreements*, if any, and such rates as are paid generally within the locality in this State where the construction of the public improvement is to be performed.").

The interest ACT seeks to protect is germane to its purpose, and ACT therefore meets the second element of our test for representative standing.

**3.** *Neither the claims asserted, nor the relief requested, require the participation of individual members of ACT.*

■ ACT is asking only for declaratory relief and an injunction. It does not seek monetary damages. Where an association only seeks a declaration, injunction, or some other form of prospective relief, the participation of its individual members is not required. *See Warth, supra,* 422 U.S. at 515, 95 S.Ct. 2197; *Board of Commissioners in*

*County of Allen, supra* at 942 ("because the relief sought is prospective and injunctive in nature and does not include an award of money damages, there is no need for individual union workers to provide particularized proof or otherwise participate in fashioning a remedy.").

The individual participation of ACT's members was not required in ACT's lawsuit seeking a declaratory judgment and injunction.

We find that the circuit court failed to give effect to the mandate of this Court in *Affiliated Construction Trades Foundation v. West Virginia Department of Transportation,* 227 W.Va. 653, 713 S.E.2d 809 (2011). We held that ACT has standing to bring the declaratory judgment action. Therefore, a writ of prohibition is the appropriate means of enforcing compliance with the mandate. Syllabus Point 5, *State ex rel. Frazier & Oxley, L.C. v. Cummings,* 214 W.Va. 802, 591 S.E.2d 728 (2003). ACT, as a matter of law, has standing to prosecute its lawsuit seeking a declaratory judgment and injunction. We grant the writ of prohibition on the standing issue because the circuit court did not give effect to the mandate of this Court in *ACT I.*

### B. Indispensable Party

The final issue we address is the circuit court's holding that the FHWA is an indispensable party and that ACT must add it as a defendant. We disagree.

The substantive issues raised in the declaratory judgment action are (1) did the DOH violate West Virginia law when it failed to solicit competitive bids for the highway construction contract, and (2) does West Virginia law require the contract to contain a prevailing wage clause. These issues relate solely to West Virginia law.

■ The construction contract provides that the agreement is "made and entered into ... by and between the West Virginia Department of Transportation, Division of Highways ... and Nicewonder Contracting, Inc." The FHWA is not a party to that agreement, any interest it may have is indi-

---

**3.** In *ACT I* we held that ACT "is a labor organization and that it represents the interests not only of its affiliated unions, but the thousands of individual workers who make up those affiliated unions." *ACT I, supra,* 227 W.Va. at 660, 713 S.E.2d at 816.

rect, and it is not indispensable to the resolution of the state law questions raised in the lawsuit. *See Wachter v. Dostert,* 172 W.Va. 93, 303 S.E.2d 731 (1983) (writ of prohibition awarded to prohibit circuit court from requiring joinder of the West Virginia Department of Highways as an indispensable party-defendant where Department's interests in the action were indirect.). No relief has been requested from FHWA. Likewise, the respondents failed to demonstrate that the declaratory judgment action will impair or impede any interest of FHWA. *State ex rel. One–Gateway v. Johnson,* 208 W.Va. 731, 542 S.E.2d 894 (2000).

We grant the writ of prohibition on the indispensable party issue to correct a substantial, clear cut legal error which would be reversed on appeal if we did not correct the error in advance of trial. *See* Syllabus Point 1, *Hinkle v. Black, supra.*

### IV. Conclusion

For the reasons stated in this Opinion, we vacate the circuit court's November 9, 2011, order, and a writ of prohibition is issued prohibiting the circuit court from enforcing the order. On remand, the circuit court shall enter an order that ACT has standing as a matter of law, and that the Federal Highway Administration is not an indispensable party. The Clerk shall issue our mandate forthwith.

Writ Granted.

Justice BENJAMIN concurs in part and dissents in part and reserves the right to file a separate opinion.

BENJAMIN, J., concurring, in part, and dissenting, in part:

I concur with the majority opinion to the extent that it grants the writ of prohibition on the standing issue. The circuit court failed to give effect to the mandate of this Court in *Affiliated Construction Trades Foundation v. West Virginia Department of Transportation,* 227 W.Va. 653, 713 S.E.2d 809 (2011) (*"ACT I"*).

I dissent, in part, for the same reason that I dissented in *ACT I.* I do not believe that the doctrine of representative standing is a sound and legally justified doctrine. Nevertheless, *ACT I* is the controlling law in the

instant case and the circuit court was legally bound to follow it on remand. The circuit court's failure to do so constitutes substantial, clear cut legal error. Therefore, though I continue to disapprove of the doctrine of representative standing, *ACT I* is precedential unless and until it is overruled.