678 S.E.2d 316

**Carl Wayne VAUGHAN, as Administrator of the Estate of Randall Wayne Vaughan, Plaintiff Below, Appellee**

v.

**GREATER HUNTINGTON PARK AND RECREATION DISTRICT, Ingram Barge Company, The Ohio River Company, LLC, and The Ohio River Terminals Company, LLC, Defendants Below, Appellants.**

**Nos. 33837, 34327.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 24, 2009.

Decided May 1, 2009.

Robert H. Akers, Scott L. Summers, Offutt, Fisher & Nord, Charleston, WV, E. Spivey Gault, Carl J. Marshall, Gault, Marshall and Miller, PLLC, Paducah, KY, for the Appellants.

Charles M. Hatcher, Jr., Charles M. Hatcher, III, Huntington, WV, for the Appellees.

PER CURIAM:

Before us is a case from the Circuit Court of Cabell County styled Carl Wayne Vaughan, as Administrator of the Estate of Randall Wayne Vaughan v. Greater Huntington Parks and Recreation District, Ingram Barge Company, The Ohio River Company, LLC, and The Ohio River Terminals Company, LLC. Two orders entered by the circuit court arising from this single case are the subjects of the pending appeals filed by Ingram Barge Company, The Ohio River Company and The Ohio River Terminals Company (hereinafter "Barge Line Companies").[1] One order dated July 19, 2007, was filed with

---

1. Although Greater Huntington Parks and Recreation District was named as a defendant in the suit, it is not involved in the appeal of either of the two orders before us.

the West Virginia Supreme Court of Appeals Clerk's Office on August 29, 2007. Another order dated October 29, 2007, was filed in the Clerk's Office of this Court on March 24, 2008. Both orders have the same circuit court civil action number of 05–C–767. Because the orders, which the Circuit Court of Cabell County has denoted as final orders, were filed on different dates in this Court, they have received two appeal numbers.[2] This Court consolidated the appeals by order of September 25, 2008.

Important, however, is that the orders arose out of the same wrongful death action brought by Mr. Vaughan (hereinafter "Appellee")[3] against owners and managers of property where his son allegedly died by drowning. The first issue raised on appeal concerns the lower court's July 19, 2007, order ruling on a motion in limine. As the order reflects, the lower court concluded upon consideration of federal maritime law that an expert witness of the Barge Line Companies would not be permitted to testify as to a personal consumption offset in any calculation of lost future earnings sought as damages in the wrongful death suit. The second issue on appeal arose later in the proceedings of the case when Appellee filed a motion for partial summary judgment after the Barge Line Companies obtained leave to amend their answer and which motion was granted. The actual issue in the trial court's October 29, 2007, order now challenged by the Barge Line Companies is the finding that the statutory immunity from liability afforded landowners for making their property available to the public for recreational and other uses[4] did not apply to the Barge Line Companies.

Having closely examined the two issues raised, we find sua sponte[5] that both of the petitions for appeal were improvidently granted because this Court's appellate authority does not extend to review of any interlocutory order which does not "approximate[ ] a final order in its nature and effect." Syllabus Point 2, *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991). Accordingly, we dismiss the appeals for lack of appellate jurisdiction.

## I. Relevant Background

As previously noted, the questioned rulings were made in a wrongful death action. The suit involves the May 2004 drowning death of Appellee's fourteen-year-old son in the Ohio River.[6] According to the complaint, the Barge Line Companies negligently caused or contributed to the teenager's death by operating their barge businesses in an area contiguous to a public park in Huntington, West Virginia, where the son was swimming. The terms of a special warranty deed in the record reveals that the property on which the park is situated was donated by the Ohio River Company to the Greater Huntington Parks and Recreation District for recreational use by the public. Among the damages sought in the suit was the lost future earnings of the son.

Material to our review of the orders now under consideration are the proceedings involving the above noted two pre-trial motions filed by Appellee.

### A. Motion in Limine

After becoming aware that the Barge Line Companies intended to offer expert testimony regarding a consumption offset to reduce gross future earnings calculations, Appellee

---

**2.** The petition filed on August 29, 2007, is designated No. 33937, while the petition filed on March 24, 2008, is identified as No. 34327.

**3.** The complaint as originally filed was brought by Mr. Vaughan and his wife in their individual capacities as well as by Mr. Vaughan in his capacity of administrator of his son's estate. The record reveals that the individual claims are no longer being pursued.

**4.** *See* W.Va.Code §§ 19–25–1 to –7 (2007 Repl. Vol.) (hereinafter "Recreational Use Statute").

**5.** *See Delardas v. Morgantown Water Commission*, 148 W.Va. 318, 321, 134 S.E.2d 889, 890 (1964), Syl. Pts. 1 & 2, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) (question of appealability being jurisdictional in nature may be considered by a court on its own motion at any time during pendency of controversy).

**6.** It is alleged in an amended complaint that Appellee's son and a fifteen-year-old companion were swimming around the subject barge or barges moored in the Ohio River on the day both boys drowned.

filed a motion in limine to exclude or limit such evidence. Appellee maintained that state law does not permit such an offset. The Barge Line Companies responded that a consumption offset is recognized under federal maritime law, and argued that where state law conflicts with maritime law in a case involving a maritime activity general maritime law would govern with regard to damages. Heretofore, the general applicability of federal admiralty law to the case was not raised nor contested by the parties.[7]

According to the terms of the circuit court's July 19, 2007, order, the motion in limine was granted to the extent that the Barge Line Companies' expert was not permitted to use a personal consumption offset in his calculation of lost future earnings. The lower court's conclusion was reached in reliance on the decision of the United States Supreme Court in *Yamaha Motor Corporation v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), in which the high court considered the impact maritime law has on remedies available under state law in wrongful death suits.[8]

### B. Motion for Partial Summary Judgment

The Barge Line Companies were granted leave to amend their answer so as to introduce into the record a mitigation agreement between the Ohio River Company and the West Virginia Public Land Corporation. The Barge Line Companies alleged that the mitigation agreement established their immunity from liability pursuant to the Recreational Use Statute. Appellee filed a motion for partial summary judgment as the means to attack the immunity defense, and offered deposition testimony of employees of the Barge Line Companies to support his argument.[9] The lower court's October 29, 2007,

---

7. Subsequent to our acceptance of the petitions for appeal in this case, this Court announced a test for state trial courts to use to determine when the subject matter of a case invokes admiralty jurisdiction so as to warrant the application of maritime law. Mirroring the test set down by the United States Supreme Court in *Grubart, Inc. v. Great Lakes Dredge & Dock Company*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), we held in syllabus point six of *River Riders, Inc. v. Steptoe*, 223 W.Va. 240, 672 S.E.2d 376 (2008), that

> Federal admiralty law governs a tort action if the wrong occurred on navigable waters, and if the incident involved had the potential to disrupt maritime activity and the general character of the activity giving rise to the incident had a substantial relationship to traditional maritime activity.

Upon return of this case to the docket, the trial court should remain cognizant of the requisite factors announced in the federal cases considered in *River Riders* as well as the federal cases discussed in *Grubart* which must be present in order to invoke admiralty jurisdiction. This preliminary finding is necessary even when the parties agree that maritime law should be applied in a case because "consent cannot confer jurisdiction of the subject-matter...." Syl. Pt. 2, in part, *Yates v. Taylor County Court*, 47 W.Va. 376, 35 S.E. 24 (1900). *See also Bartles v. Hinkle*, 196 W.Va. 381, 388, 472 S.E.2d 827, 834 (1996) ("[I]nsofar as subject matter jurisdiction is concerned ... [c]ourts are never bound by the acts or agreements of the parties."). In order to make this determination in light of the *River Riders* criterion, the trial court should analyze (1) whether the facts demonstrate that the alleged wrong occurred on navigable waters (location

test); and (2) whether (a) the incident itself had the potential to—or in fact did—disrupt maritime activity, and (b) the circumstances giving rise to the incident had a substantial relationship to traditional maritime activity (connection test).

It is clear that if admiralty jurisdiction is established that maritime law will have a bearing on the determination of the issue regarding a consumption offset to lost future earnings. The briefs before us suggest that maritime law considerations may also influence the question of statutory immunity under the Recreational Use Statute and this matter too may need to be revisited by the trial court if it is determined that admiralty jurisdiction governs.

8. The July 19, 2007, order expresses the reasoning of the lower court as follows:

> The United States Supreme Court decision in *Yamaha Motor Corporation v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) held that, "In maritime wrongful-death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in maritime trade, state remedies remain applicable and have not been displaced by the wrongful death action recognized in ... [*Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)]." The decision in *Yamaha* has not been distinguished or overruled by subsequent case law. It is, therefore, the Court's conclusion that *Yamaha* does, in fact, control the issue at hand and the Plaintiff is entitled to seek state remedies in this wrongful death action.

9. In Appellee's memorandum supporting his motion for partial summary judgment, citation was

order granted partial summary judgment for Appellee finding that the Barge Line Companies were not immune from liability under the provisions of the Recreational Use Statute.

## II. Discussion

■ While the orders of the lower court in this case disposed of the issues under consideration, neither order represented a final judicial determination from which an appeal may be taken. Syllabus point three of *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995), recognizes a statutory basis for a rule of finality which limits appellate review to final judgments of a lower court:

> Under W.Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

Although West Virginia Code § 58–5–1 underwent significant revision in 1998, the general rule remains that an appeal lies from a *final judgment*. With specific regard to civil actions, West Virginia Code § 58–5–1 (1998) (2005 Repl. Vol.) currently provides:

> A party to a civil action may appeal to the Supreme Court of Appeals from a *final judgment* of any circuit court *or* from *an order* of any circuit court *constituting a final judgment* as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties....

(emphases added). A companion provision to this statute is found in Rule 54 of the West Virginia Rules of Civil Procedure (hereinafter "Rule 54"). Section (a) of Rule 54 provides that the use of the term "judgment" in the rules means "any order from which an appeal lies." Rule 54(b) elaborates on those orders referred to in West Virginia Code

§ 58–5–1 as final judgments which are ripe for appellate review even though they dispose of fewer than all claims or parties to a suit. This portion of Rule 54 states:

> (b) *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

■ By limiting appellate consideration to final judgments, the finality rule serves to avoid piecemeal review of trial court rulings which do not end litigation regarding all or some claims or parties in a case. We commented further in *James M.B.* that

> [t]he "finality rule" preserves the autonomy of the trial court by minimizing appellate interference, ensuring that the role of the appellate court will be one of review rather than one of intervention. It furthers efficiency by providing there only will be review where the record is complete and the judgment pronounced. It preserves integrity and emphasizes the importance of the harmless error doctrine by prohibiting review until an appellate court can determine whether a claimed trial error was harmless. Finally, in the civil context, the rule reduces the ability of

made in a footnote to *Toler v. Shelton*, 159 W.Va. 476, 223 S.E.2d 429 (1976), and *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994), *superseded by statute on other grounds*, *Smith v. Consol. Public Retirement Bd.*, 222 W.Va. 345, 664

S.E.2d 686 (2008), for the proposition that the proper method for attacking a defense when deposition testimony is relied upon is by motion for partial summary judgment rather than by motion to strike the defense.

litigants to wear down their opponents by repeated, expensive appellate proceedings. 193 W.Va. at 292 n. 2, 456 S.E.2d at 19 n. 2 (internal citations omitted). There are exceptions to the rule of finality, but they are rare and "fall within a specific class of interlocutory orders which are made appealable by statute or by the West Virginia Rules of Civil Procedure, or must fall within a jurisprudential exception." *James M.B.*, 193 W.Va. at 292–93, 456 S.E.2d at 19–20 (footnotes omitted).[10]

■ Both orders before us contain the declaration that the orders are final and appealable pursuant to the provisions of Rule 54(b) of the West Virginia Rules of Civil Procedure and West Virginia Code § 58–5–1. In specific compliance with the terms of Rule 54(b), both orders contain the following statements:[11]

> The Court further finds that there is no just reason for delay. Therefore this is a final and appealable Order of this Court as to this issue.

Standing alone, this statement of finality does not satisfy the elements of a final judgment making an order ripe for appeal.

■ The order granting the motion in limine is simply an evidentiary pre-trial ruling regarding admissibility of testimony related to the issue of damages. "A motion *in limine* is a procedure which enables the trial court to become acquainted with a potentially troublesome evidentiary issue in advance of the offer of the evidence … in order to prevent the jury from being exposed to inadmissible evidence." *Daniel v. Stevens*, 183 W.Va. 95, 103–04, 394 S.E.2d 79, 87–88

(1990). As such, the resulting order is not a final judgment because it obviously is not dispositive of the entire suit, it does not conclude proceedings on a claim raised in the suit, nor does it release a party from all or part of the suit.

■ Likewise, the order granting partial summary judgment in this instance clearly does not represent a final judgment. The immunity provisions of the Recreational Use Statute only raises a potential *defense* rather than a right to assert a claim. Again, the controlling factors for determining whether a judgment is final and ripe for appeal pursuant to West Virginia Code § 58–5–1 and Rule 54 of the West Virginia Rules of Civil Procedure is that the ruling serves to dispose of the entire suit, or to a claim listed or a party named in the suit.

To reiterate, although both orders on appeal declared the trial court's intention that they were "final and appealable," such indication by itself does not satisfy the requirements of finality. Discussing the finality rule with regard to certified questions we observed in the case of *Province v. Province*, 196 W.Va. 473, 473 S.E.2d 894 (1996), that in order to establish the requisite degree of finality

> the judgment must completely dispose of at least one substantive claim. A partial or interlocutory adjudication of a claim cannot be certified merely because it is labelled [sic] a "partial final judgment" … even if the requisite express determination [as set forth in Rule 54(b)] has been made.

*Id.* at 479 n. 12, 473 S.E.2d at 900 n. 12. Despite the lower court's expression of finality in the orders before us, the rulings fail to

---

**10.** We explained in *James M.B.* that the statutory and rule-based exceptions to the finality rule include writs of prohibition, West Virginia Code § 53–1–1 (1923), certified questions, West Virginia Code §§ 58–5–2 (1998) and 51–1A–3 (1996), and judgments made pursuant to Rule 54(b) of the Rules of Civil Procedure. *See* 193 W.Va. at 292–293 n. 3, 456 S.E.2d at 19–20. It was suggested in *James M.B.* that a jurisprudential exception to the rule would permit appellate review of an order which

> (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action and is effectively unreviewable on appeal from a final judgment.

*Id.* at 293 n. 4, 456 S.E.2d at 20 n. 4 (citations omitted).

**11.** There is no question from reading the transcripts of the hearings on the motion in limine and the motion for partial summary judgment that the primary concern for filing these appeals was to seek guidance from this Court on the *issues* decided, tantamount to the purposes of certified questions. Clearly, the focus of the discussion in these hearings was using the "right words" in the orders rather than examining whether the substantive matters decided were appealable as final judgments.

dispose of the suit or to terminate litigation as to a claim or a party and thus do not represent the degree of finality which would permit interlocutory appellate review.

Accordingly, these matters are dismissed from our docket as improvidently granted because neither of the orders are final judgments. The dismissals are without prejudice so that the matters may be appealed if deemed necessary after a proper final judgment is in place. *See* Syl. Pt. 2, *Lloyd v. Kyle*, 26 W.Va. 534 (1885) ("Where an appeal is properly obtained ... [it] will bring with it for review all preceding non-appealable decrees or orders, from which have arisen any of the errors complained of in the decree appealed from....").

## IV. Conclusion

Based upon the foregoing, both individually filed appeals before us in this case are dismissed as improvidently granted, and the case is returned to the Circuit Court of Cabell County for further proceedings consistent with this opinion.

Dismissed without prejudice.