**FILED**

**May 27, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Wayne White, Michael Wood, Joshua Gandee,
and others similarly situated, and the
International Association of Fire Fighters Local 91,
Petitioners, Plaintiffs below

**v.) No. 24-82** (22-ICA-142)

City of Parkersburg,
Respondent, Defendant below

## MEMORANDUM DECISION

Petitioners Wayne White, Michael Wood, Joshua Gandee, and others similarly situated (collectively, "the Firefighters"), and the International Association of Fire Fighters ("the IAFF") Local 91 filed this action in the Circuit Court of Wood County alleging that Respondent City of Parkersburg ("the City") violated the West Virginia Wage Payment and Collection Act ("WPCA")[1] when it reduced the Firefighters' longevity increment and Emergency Medical Technician ("EMT") certification pay in 2017, without notice, which caused them to receive less pay per hour.[2] The circuit court granted summary judgment to the Firefighters on the issue of liability, held that IAFF Local 91 had representative standing, and later ruled in the Firefighters' favor on a dispute regarding the calculation of damages. The City appealed to the Intermediate Court of Appeals of West Virginia ("ICA"). On December 27, 2023, the ICA reversed the circuit court's summary judgment order and remanded the matter with directions to enter an order granting the City's motion for summary judgment, in part, dismissing Count I of the amended complaint (longevity increment), dismissing the claims of the IAFF Local 91 in their entirety for lack of representative standing, and for further proceedings on Count II (EMT pay).[3]

On appeal to this Court, the Firefighters and the IAFF Local 91 ask that we reverse the decision of the ICA, reinstate the orders of the circuit court and remand for further proceedings for the calculation of damages. As explained below, we agree that the City's reduction in the Firefighters' accrued longevity increment and EMT pay, without notice, violated the WPCA, and that the IAFF Local 91 has representative standing. Because this appeal presents no substantial

---

[1] *See* W. Va. Code §§ 21-5-9(1) – (3).

[2] Petitioners are represented by counsel Walt Auvil and Kirk Auvil. The City is represented by counsel Johnnie E. Brown and Donovan M. Powell.

[3] *City of Parkersburg v. White*, No. 22-ICA-142, 2023 WL 9317831 (W. Va. Ct. App. Dec. 27, 2023) (memorandum decision).

1

question of law, a memorandum decision reversing the decision of the ICA is appropriate. *See* W. Va. R. App. P. 21(d).[4]

## Factual and Procedural History

In 2018, the Firefighters, full-time civil service employees, and the IAFF Local 91 sued the City over a pay dispute. There are two classes of increased hourly pay at issue in this case: longevity increment and EMT pay. The parties agree that the applicable pay policies are contained in two ordinances adopted by the Parkersburg City Council that became effective July 1, 2008.

The first ordinance provided the Firefighters with a longevity increment; employees working a forty-eight-hour workweek were entitled to an additional twenty-five cents per hour ($0.25), and those working a fifty-four-hour workweek were entitled to twenty-two point two two cents per hour ($0.2222), for each year of city service.[5] The second ordinance provided the EMT certified Firefighters an increase in their hourly pay; employees working a forty-eight hour workweek were entitled to an additional forty-two cents per hour ($0.42), and day shift personnel were entitled to an additional fifty cents per hour ($0.50).[6] This ordinance did not contain a specific pay rate for EMT pay for employees working a fifty-four-hour workweek.

---

[4] The Court appreciates the amicus brief filed by the Professional Fire Fighters of West Virginia and West Virginia Employment Lawyers Association in support of the Firefighters and the IAFF Local 91.

[5] The circuit court noted that there were two versions of the ordinance governing the longevity increment in the record, one adopted on May 20, 2008, that did not mention the rate for fifty-four-hour workweek employees, and a second version adopted on November 8, 2011 (that states it was "Revised 05/20/08"), stating that,

> [e]ffective July 1, 2008 (not retroactive) all full-time regular employees, police civil service employees, and fire (40-hour) civil service employees will receive longevity of thirty ($.30) cents per hour for each year of city service. Appointed part-time employees will receive longevity of six hundred twenty-four ($624) dollars per year for each year of city service. Fire civil service employees working a 48[] hour work-week will receive longevity of twenty-five ($.25) cents per hour for each year of city service. Fire civil service employees working a 54[]hour work-week will receive longevity of twenty-two point two two($.2222) cents per hour for each year of city service. Employees will receive said longevity on their anniversary date of employment. Longevity will be included in the base pay for purposes of overtime, etc. The granting of all longevity pay is contingent upon City Council action and approval through the City budget.

[6] The ordinance governing EMT pay stated, in relevant part, that,

> [a]ll members of the Department who attain the designation of Firefighter/EMT and maintain certification of an Emergency Medical Technician shall receive an increase in pay of forty-two cents ($0.42) per hour for all forty-

2

The Firefighters were working a forty-eight-hour workweek in July 2008. So, the City paid them a longevity increment at $0.25 per hour for each year of city service, and paid qualified Firefighters EMT pay at $0.42 per hour, consistent with the ordinances.

On July 1, 2011, the City changed the Firefighters' schedules to a fifty-four-hour workweek. At the same time, the City suspended the operation of the longevity increment. While the Firefighters did not earn the longevity increment increases after 2011, the City continued to pay them previously accrued longevity increments for each year worked according to the prior applicable ordinances. For example, the years between July 1, 2008, and July 1, 2011, were paid according to the rates established in the 2008 ordinance (for a forty-eight-hour workweek), and the years of service prior to 2008 were paid according to their respective ordinances. The City also continued to pay qualified Firefighters EMT pay at the rate of $0.42 per hour, despite the change in their schedules.

In March 2017, the City concluded that it was not applying the ordinances correctly, considering the Firefighters' fifty-four-hour workweek.[7] So, beginning in August 2017, it began providing annualized increases of $624 for longevity increment and $1,040 for EMT pay. For the longevity increment, the City assessed the Firefighters' work schedules and divided their scheduled hours for each year by $624 and then added that amount to each Firefighters' hourly rate. This change caused a reduced hourly rate of pay for all the Firefighters; the amount of the hourly reduction depended on the number of years of each employee's city service. For EMT pay, the City divided the $1,040 annual amount the City decided was due under the ordinance into the Firefighters' fifty-four-hour workweek schedule which reduced the EMT pay from $0.42 per hour to $0.37 an hour. The City maintained that it was unnecessary to give the Firefighters notice of the pay change because it was simply correcting an error, consistent with the intent of the ordinances.[8] The pay reductions imposed by the City in 2017 were not submitted to the Parkersburg City Council for approval.

_____

eight (48) hour work week personnel and fifty cents ($0.50) per hour for all day shift personnel effective July 1, 2008.

[7] The City claimed that it discovered its error during a grievance proceeding Petitioner White filed after he was not selected for the position of fire inspector. Mr. White attempted to resolve the issue of the reduction of his hourly pay through the grievance procedure prior to the Firefighters filing the complaint in this matter.

[8] The City reasoned that the longevity increment was intended to be $624 per year regardless of the number of hours the Firefighters worked each week because multiplying either a forty, forty-eight, or fifty-four-hour workweek by the corresponding rates of $0.30, $0.25, and $0.2222, respectively, totals $624 per year. Although the ordinance did not set an EMT pay rate for those working a fifty-four-hour work week, the City interpreted the ordinance to provide an annual pay increase of $1,040 for EMT pay and adjusted the hourly rate to match the fifty-four-hour workweek.

The Firefighters and the IAFF Local 91 filed a two-count amended complaint in October 2018 against the City. In Count I, they alleged that the reduction of the longevity increment, without notice, violated the written terms of their employment agreement and the WPCA. In Count II, they alleged that the reduction of EMT pay, without notice, violated the employment agreement and the WPCA. The Firefighters alleged that the IAFF Local 91 represented them and all other similarly situated employees of the City of Parkersburg Fire Department. The Firefighters and the IAFF Local 91 sought reinstatement of the pay practices set forth in the ordinances, damages for lost wages, injunctive relief prohibiting the City from taking further actions in violation of the ordinances, as well as costs and attorney fees.

The City moved to dismiss the complaint, and the circuit court denied the motion. The parties ultimately agreed that there was no dispute of material fact as to liability and filed cross-motions for summary judgment.

The circuit court denied the City's motion for summary judgment. In its October 22, 2021, amended order, the circuit court granted the Firefighters' motion for summary judgment on liability. It concluded that the City's 2017 reduction of the Firefighters' hourly wages—accrued longevity increment and EMT pay—without notice of a change in these pay practices, violated the WPCA. The circuit court found that the ordinances provided that the Firefighters should have received $0.25 per hour for accrued longevity increment during the applicable timeframe. It stated that the City's argument that the eligible employees were to receive $624 per year in longevity increment was negated by the plain language of the ordinance, and that the City failed to consider that, due to overtime, the Firefighters would receive different amounts per year for longevity increment. The circuit court found the issue of EMT pay "much clearer." It stated that in 2017, the City reduced EMT pay from $0.42 per hour to $0.37 an hour when there was "absolutely no language in [the ordinance] to support a reduction[.]" The circuit court concluded that the Firefighters "should have received $0.25 per hour from 2017 to present for their accrued longevity pay[,]" and "$0.42 per hour for the EMT certification pay from 2017 to present." It ordered that all eligible fifty-four-hour workweek employees, "shall be paid $0.25 per hour per years of service between July 1, 2008 and July 1, 2011 for longevity pay and $0.42 per hour for EMT [pay.]" Finally, the circuit court found that IAFF Local 91 had representative standing. It ordered the matter to proceed on the issue of damages.

The parties did not agree on how to calculate damages, and the circuit court conducted a hearing on May 5, 2022, to resolve the dispute. The Firefighters argued that the City's calculations did not fully restore their pay to the pre-2017 amounts, because it was considering ordinances prior to 2008. On the other hand, the City contended that the Firefighters sought to increase pre-2008 longevity increment, even though there was no basis upon which the circuit court's amended summary judgment order could be interpreted to affect years of service prior to the 2008 ordinance. The circuit court noted that the City did not contend that pre-2008 ordinances (not previously produced or relied on) affected the 2017 recalculation of the Firefighters' hourly rate of pay until April 2022. It concluded the City was judicially estopped from inserting new defenses into the litigation. On August 31, 2022, the circuit court ordered that the Firefighters be restored to the hourly rate prior to the 2017 reduction, including correcting the retirement pay rate for any affected firefighter. On September 28, 2022, the circuit court entered an "Agreed Order Staying the August

4

31st Order and Declaring the August 31st Order a Final Appealable Order as to Liability" to allow the City to appeal to the ICA.

The City appealed the circuit court's final order to the ICA, raising assignments of error related to the substantive rulings in the amended summary judgment order. The ICA issued a memorandum decision reversing the circuit court's October 22, 2021, amended order.[9] It determined that the City's application of the fifty-four-hour longevity increment rate set forth in the 2008 ordinance was not a change or reduction in wages contemplated by the WPCA. However, the ICA found that because no city personnel worked a fifty-four-hour workweek at the time the EMT pay ordinance was enacted in 2008, the ordinance failed to provide notice of the change in pay as required under the WPCA. It found the record was unclear whether the City otherwise provided notice to its employees. The ICA remanded the matter to the circuit court with directions to enter an order granting the City's motion for summary judgment in part, dismissing Count I of the amended complaint (longevity increment), dismissing the claims of the IAFF Local 91 in their entirety, and for further proceedings on Count II to determine whether the City provided notice to the Firefighters of the change in EMT pay.

The Firefighters and the IAFF Local 91 now appeal the ICA's memorandum decision to this Court.

**Standard of Review**

"On appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a

---

[9] The ICA noted that, "ordinarily, an order determining liability without a determination of damages is not a final adjudication of a claim and is not immediately appealable." *White*, 2023 WL 9317831, at *4 n.5. However, it deferred to the circuit court's determination that the case met the ministerial exception to finality. *See* Syl. Pt. 3, in part, *C & O Motors, Inc. v. W. Va. Paving, Inc.*, 223 W. Va. 469, 677 S.E.2d 905 (2009) ("However, an immediate appeal from a liability judgment will be allowed if the determination of damages can be characterized as ministerial. That is, a judgment that does not determine damages is a final appealable order when the computation of damages is mechanical and unlikely to produce a second appeal because the only remaining task is ministerial, similar to assessing costs."). At oral argument, the parties agreed that this case satisfied the ministerial exception to finality.

Further, the ICA found that the City did not exceed the scope of this appeal by challenging the circuit court's rulings from the October 22, 2021, order. *See* Syl. Pt. 6, *Riffe v. Armstrong*, 197 W. Va. 626, 477 S.E.2d 535 (1996) *holding modified by Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999) ("Where an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding nonappealable decrees or orders, from which have arisen any of the errors complained of in the decree appealed from, no matter how long they may have been rendered before the appeal was taken.") (internal citations omitted)).

5

circuit court's entry of summary judgment." Syl. Pt. 1, *Moorhead v. W. Va. Army Nat'l Guard*, 251 W. Va. 600, 915 S.E.2d 378 (2025). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(a). *See also* Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."). Based on these standards, this Court will consider the parties' arguments.

**Discussion**

The Firefighters and the IAFF Local 91 first contend that the City's 2017 reduction of the longevity increment and EMT pay was in violation of the ordinances, nine years of its pay practices, and the WPCA. *See* W. Va. Code §§ 21-5-9(1) – (3). They argue that it is undisputed that the City made these changes without notice and that the changes caused the Firefighters to receive less pay per hour than they had been receiving from 2011 to August 2017. The City responds that because its corrective measures were consistent with the intent of the ordinances, notice was unnecessary.

We begin our analysis by examining the WPCA. As such, we are mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Therefore, where the legislative intent is plainly expressed, we are required to apply rather than interpret the statute at issue. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

The WPCA "is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." *Mullins v. Venable,* 171 W. Va. 92, 94, 297 S.E.2d 866, 869 (1982). The WPCA provides that employers must notify employees of their rate of pay, comply with their written pay policies, and furnish notice to employees of any changes in those arrangements before making such changes. *See* W. Va. Code § 21-5-9. The WPCA provides, in relevant part:

> Every person, firm and corporation shall:
>
> (1) Notify his employees in writing, at the time of hiring of the rate of pay, and of the day, hour, and place of payment.
>
> (2) Notify his employees in writing, or through a posted notice maintained in a place accessible to his employees of any changes in the arrangements specified above prior to the time of such changes.
>
> (3) Make available to his employees in writing or through a posted notice maintained in a place accessible to his employees, employment practices and policies with regard to vacation pay, sick leave, and comparable matters.

6

*Id.* at §§ 21-5-9(1) – (3).

We first address whether the City made any changes in the arrangements specified in the ordinance regarding the rate of pay for the longevity increment without giving the Firefighters notice. The parties agree that the City paid the Firefighters longevity increment at the rate of $0.25 per hour for each year of city service from 2008 through 2011 in accordance with the ordinance. When the City suspended the longevity increment beginning in July 2011, it continued to pay accrued longevity increments at $0.25 per hour. But in 2017, it reduced the Firefighters' longevity increment—which had accrued between 2008 and 2011—without notice. Beginning in August 2017, the City began providing annualized increases of $624 for longevity increment for all employees (which it calculated at $0.22 per hour), even though the ordinance only referenced $624 per year for appointed part-time employees.[10] The parties agree that none of the Firefighters affected by the 2017 reduction in hourly wages were ever appointed part-time employees.

The City maintains that its 2017 reduction of the longevity increment was consistent with the ordinance, so notice of the change was unnecessary considering the Firefighters schedule change to a fifty-four-hour workweek in 2011. However, this argument is unpersuasive because the Firefighters did not earn additional longevity increment after their schedule changed. The longevity increments at issue accrued between 2008 and 2011, when the Firefighters worked a forty-eight-hour workweek, and the ordinance provided that they were to be paid at the rate of $0.25 per hour for each year of city service. Accordingly, the circuit court correctly concluded that the City violated the WPCA when it changed the rate of accrued longevity increment pay without prior notice. *See* W. Va. Code § 21-5-9(2). The ICA erred when it concluded otherwise.

As this Court has held,

> In the absence of a contractual obligation providing otherwise, a public employer is permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees and where the modification of policy does not retroactively impair previously earned and vested rights, such as pension benefits.

Syl. Pt. 4, *Boggess v. City of Charleston*, 234 W. Va. 366, 765 S.E.2d 255 (2014).

The City's attempt to characterize its changes to the Firefighters' longevity increment as a corrective, prospective measure consistent with *Boggess* is unconvincing. Rather, the City unilaterally modified the longevity increment policy without prior notice, and this modification retroactively impaired previously earned longevity increments, a practice prohibited under *Boggess*.[11]

---

[10] *See supra* note 5.

[11] Therefore, we agree with the Firefighters that there was no overpayment of their longevity increment from 2011 to 2017, the issue raised in their second assignment of error.

7

We next address whether the City made any changes in the arrangements specified in the ordinance regarding the rate of EMT pay without giving the Firefighters notice. The parties agree that the City paid EMT pay at the rate of $0.42 per hour beginning in 2008 in accordance with the ordinance. Beginning in August 2017, the City began providing annualized increases of $1,040 for EMT pay, and reduced it to $0.37 per hour, without notice. The circuit court correctly concluded that the City's recalculation of the EMT pay to $0.37 per hour had no foundation in the language of the ordinance.[12] Therefore, the circuit court correctly concluded that the City violated the WPCA when it reduced the rate of EMT pay in August 2017 without prior notice to the Firefighters and despite having paid that rate from 2008 to 2017. *See* W. Va. Code § 21-5-9(2); *see also Boggess*, Syl. Pt. 4, in part, 234 W. Va. at 377, 765 S.E.2d at 266 (public employer may "unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees"). The ICA erred when it concluded otherwise.

Turning to the issue of damages, the Firefighters and the IAFF Local 91 argue that the circuit court correctly applied judicial estoppel to preclude the City from providing new evidence and arguments after the October 22, 2021 amended order.[13] They contend that the City waived any argument about differing amounts of longevity increment preceding the adoption of the 2008 ordinance. On the other hand, the City maintains that it did not raise a new defense but it was simply performing damage calculations in accordance with the circuit court's October 22, 2021 amended order. It also contends that the circuit court's August 31, 2022, order "effectively granted back pay for longevity pay earned and paid at rates according to pre-2008 ordinances which have separate and unique terms and conditions[,]" that the Firefighters never challenged in their amended complaint. The parties' arguments on this issue are unclear. However, this Court discerns that the circuit court's October 22, 2021, amended summary judgment order accurately represents the relief the Firefighters sought—to correct the pay discrepancies that resulted from the City's 2017 recalculation of the relevant 2008 ordinances. We note that in its August 31, 2022, final order the circuit court confirmed that the Firefighters "are entitled to full reinstatement of the hourly rates of pay which were removed from them in 2017[.]" It held that the City was "judicially estopped from including any additional alleged causes for the reduction in longevity pay which it has repeatedly represented was caused solely by its 2017 reinterpretation of the Revised 5/20/08 longevity pay ordinance." It also held that, "[a]s to each affected firefighter the City will restore the reduction in each employee's hourly rate it imposed in 2017[.]" So, the fact that some

---

[12] *See supra* note 6.

[13] In Syllabus Point two of *West Virginia Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005), this Court held:

> Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

Firefighters received longevity increment at reduced rates (under prior ordinances) that accrued before the 2008 ordinance was adopted should not affect the restoration of their 2017 pay reduction in this matter. For this reason, we conclude that the circuit court did not err when it applied judicial estoppel to preclude the City from providing new defenses to the reason why it recalculated the Firefighters' longevity increment and EMT pay in 2017.

In their final assignment of error, the Firefighters and the IAFF Local 91 argue that the IAFF Local 91 has representative standing under the test set forth by this Court in Syllabus Point four of *Affiliated Construction Trades Foundation v. West Virginia Department of Transportation*, 227 W. Va. 653, 713 S.E.2d 809 (2011):

> An organization has representative standing to sue on behalf of its members when the organization proves that: (1) at least one of its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

The parties agree that the first two criteria of *Affiliated Construction Trades Foundation* are established, but they part ways on whether the third criterion is shown. The City maintains that it is not satisfied because the WPCA limits remedies to causes of action brought by the affected employees or the Commissioner of Labor. *See* W. Va. Code § 21-5-12. The City argues that the Firefighters' WPCA claim requires the participation of individual members in the lawsuit. On the other hand, the Firefighters and the IAFF Local 91 argue that the City ignores that they sought injunctive relief in the amended complaint, which would not require the participation of individual members in the lawsuit. So, they argue that the third criterion of *Affiliated Construction Trades Foundation* is met.

We agree with the Firefighters and the IAFF Local 91 that monetary damages recoverable under the WPCA are distinguishable from the injunctive relief sought here, in that injunctive relief generally benefits every member of an employee association equally whereas the amount of monetary damages an employee suffers may vary from employee to employee. *See Warth v. Seldin*, 422 U.S. 490, 515 (1975). "Where an association only seeks a declaration, injunction, or some other form of prospective relief, the participation of its individual members is not required." *State ex rel. Affiliated Const. Trades Found. v. Stucky*, 229 W. Va. 408, 414, 729 S.E.2d 243, 249 (2012). For this reason, we conclude that the circuit court correctly found that the IAFF Local 91 has met all the criteria for representative standing. The ICA erred when it concluded otherwise.

## Conclusion

For the reasons stated above, we reverse the December 27, 2023, memorandum decision of the ICA and remand this case to the circuit court for further proceedings for the calculation of damages, consistent with this decision.

Reversed and Remanded.

**ISSUED:** May 27, 2026

**CONCURRED IN BY:**

Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

**DISSENTING:**

Chief Justice C. Haley Bunn


Bunn, Chief Justice, dissenting:

Summary judgment is appropriate "only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 2, in part, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) (quoting Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963) and Syl. Pt. 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)). Despite the parties' insistence otherwise, and the majority's capitulation to their position, this case does not present such a circumstance of settled facts requiring no further development. Primarily at issue in this matter is the calculation of certain longevity pay for plaintiff firefighters, who are employees of the defendant City of Parkersburg, and whether the City's change in the calculation of that pay violated the West Virginia Wage Payment and Collection Act ("WPCA"), West Virginia Code §§ 21-5-1 to -18. The circuit court, the Intermediate Court of Appeals ("ICA"), and the majority all prematurely granted summary judgment relating to the plaintiff firefighters' longevity pay— even as these various courts ruled differently on which parties should prevail, the operative facts, and, apparently, the application of the law to those facts. Despite purportedly applying the same law to the same found facts, the circuit court and the majority found in favor of the plaintiffs, while the ICA ruled in favor of the defendant. *See City of Parkersburg v. White*, No. 22-ICA-142, 2023 WL 9317831, at *5 (W. Va. Ct. App. Dec. 27, 2023) (memorandum decision). I dissent to the majority's resolution of this case because without further factual and legal development in the circuit court, issues of material fact remain regarding the plaintiff firefighters' longevity pay.[1]

---

[1] The parties appeal other issues as well, including EMT pay and whether the International Association of Fire Fighters Local 91 has standing. However, because I believe that the various courts prematurely decided the issue regarding the firefighters' longevity pay and the matter should have had more factual and legal development, I do not reach the other issues on appeal.

Summary judgment should not have been prematurely granted to either party regarding the calculation of longevity pay. Instead, I would have reversed the ICA's decision, vacated the circuit court's order granting summary judgment to the plaintiffs, and remanded the matter back to the circuit court for further factual development and legal analysis.

## A. Relevant Factual and Procedural History

The heart of this matter concerns language in a 2008 City pay ordinance—and its 2011 amendment—relating to firefighters. In 2008, all firefighters worked a forty-eight hour workweek. The City adopted the first version of the longevity ordinance on May 20, 2008, which provided that "[e]ffective July 1, 2008 (not retroactive)" full time regular and fire civil service employees working forty hours a week would receive $.30 "per hour for each year of city service," part-time employees would receive $624 per year for each year of city service, and, particularly relevant to this matter, "[f]ire civil service employees working a 48-hour work-week will receive longevity of twenty-five ($.25) cents per hour for each year of city service." The ordinance provided that the City would pay the longevity "on their anniversary date of employment" and "[l]ongevity will be included in the base pay for purposes of overtime, etc."

Effective July 1, 2011, the City suspended longevity pay "but not prior years' service credit." In relevant part, the ordinance suspending longevity pay read as follows:

> [T]he operation of the Longevity Plan, Section VIII, The Compensation Plan of the City of Parkersburg Personnel Policies and Procedures or as it may be set forth and contained elsewhere, be and it is hereby suspended and held for naught for the budget years 2011-2012 and 2012-2013 and which longevity pay is based upon such years, but not prior years' service credit.

A few months later, on November 8, 2011, the City changed firefighters' employment to a fifty-four hour workweek. That same day, in the ordinance addressing longevity pay partially recited above, and although longevity pay had been suspended in July 2011, the City adopted a rate of longevity pay for employees working a fifty-four hour workweek ($0.2222 per hour per year) that differed from those employees working forty-eight hour workweeks ($0.25 per hour per year).[2] That ordinance read, in full, then provided:

> Effective July 1, 2008 (not retroactive) all full-time regular employees, police civil service employees, and fire (40-hour) civil service employees will

---

[2] The majority contends that the change of schedule and suspension of the longevity increment occurred simultaneously. However, the findings of the circuit court do not support that contention.

receive longevity of thirty ($.30) cents per hour for each year of city service. Appointed part-time employees will receive longevity of six hundred twenty-four ($624) dollars per year for each year of city service. Fire civil service employees working a 48hour [sic] work-week will receive longevity of twenty-five ($.25) cents per hour for each year of city service. Fire civil service employees working a 54hour [sic] work-week will receive longevity of twenty-two point two two($.2222) cents per hour for each year of city service. Employees will receive said longevity on their anniversary date of employment. Longevity will be included in the base pay for purposes of overtime, etc. The granting of all longevity pay is contingent upon City Council action and approval through the City budget.

As noted by the circuit court, in the Compensation Plan, this language stated that it was "revised 05/30/08[.]"

Yet, after the 2011 change to a fifty-four hour workweek and through 2017, the City of Parkersburg paid firefighters the higher rate of $0.25 per hour per year of each employee's city service. In 2017, however, the City reduced the amount paid to those employees per hour for longevity pay to $0.2222. As discussed further below, the parties disagree as to the reason for this change and whether this change was legal pursuant to the WPCA.

Relating to the longevity pay, in the Amended Complaint, the plaintiff firefighters asserted that, by reducing their longevity pay, the City of Parkersburg "alter[ed] the terms and conditions of the payment of the longevity pay" thus violating the WPCA.[3] The plaintiffs claimed that the terms and conditions of employment were set forth in the longevity pay ordinance and quoted the 2011 version in the complaint. The plaintiffs asserted the longevity pay was "not retroactive[,]" so "lowering . . . longevity pay" violated the "written terms of employment" and violated the City's "representations to Plaintiffs regarding longevity pay." In its answer to the Amended Complaint, the City denied that it had violated the WPCA, instead asserting that it realized in 2017 that it had paid the plaintiffs and other employees in error and reduced their longevity pay.

The parties, by each filing their own motions for summary judgment before the circuit court, separately contended that there is no genuine issue of material fact. However, the facts, as argued by the parties to the circuit court, contained significant, material discrepancies relating to the operation of the longevity ordinance and Compensation Plan at issue, why the pay changed, and the effect of firefighters working a fifty-four hour workweek on the calculation of longevity pay relative to that ordinance. While both parties agreed that consistently for nine years (between 2008 and 2017) the City paid the firefighters $.25 per hour per year under the ordinance, whether

_____

[3] The Amended Complaint provided no statutory citation to the WPCA.

those payments after 2011 were proper was and continues to be a matter of contention and a factual dispute between the parties.

In the City's memorandum of law in support its motion for summary judgment submitted to the circuit court, the City contended that from July 2011 until March 2017, firefighters "incorrectly received the $.25 rate reserved for a 48-hour work week longevity payment rather than the correct $.2222 per hour rate for a 54-hour work week." The City characterized these payments as mistakes and overpayments, stating that the overpayments "continued until the mistake was discovered and subsequently corrected in 2017." The City then explained that it reduced the longevity pay from the forty-eight hour workweek pay rate of $.25 per hour "to the correct 54-hour work week rate of $.2222 as stated in the Longevity Plan." The City asserts that this amount corresponded with the "approved amount of $624 per year employed as set forth in the Longevity Plan."

The plaintiffs, on the other hand, argued in their motion for summary judgment as to liability that from 2008 until 2017, the longevity payments were "paid properly" and the policy adopting the longevity pay increment "provide[s] that [it] be calculated exactly was [it] was from [its] inception in 2008 through [the City's] 'reinterpretation' in 2017." The plaintiffs further claim that the "2017 'reinterpretation' violates the employment agreement" and finally contend that the City "adopted a policy" of paying $.25 per hour per year longevity increments and the "reinterpretation" is a violation of the WPCA.

In considering the parties' cross motions for summary judgment, the circuit court found in favor of the plaintiffs and concluded, in an Amended Order issued on October 22, 2021, that:

1. The City's "argument that all eligible City employees were to receive a set $624.00 per year is negated by the language of the statute and the failure to consider that due to overtime, the employees would be receiving different amounts for longevity";

2. The City's actions "constituted a reduction in the Plaintiffs' wages" and noting that the Plaintiffs "had been paid the longevity pay at the rate of $0.25 per hour per year of service for nine years";

3. The "the pay reductions were made without written notification of changes to pay practices"; and

4. The "longevity pay was accrued between July 1, 2008 and June 30, 2011," and the change of hourly work weeks was not in effect until November

2011, and in turn finding that the firefighters "had a vested right to the rate of $.25 per hour."

Ultimately, the circuit court also determined that the City violated the WPCA generally, but the court did not identify what provision was violated or explain how the City violated it. The court also noted that "the Plaintiffs should have received $0.25 per hour from 2017 to the present for their accrued longevity pay[,]" granted the plaintiffs' motion for summary judgment, denied the City's motion for summary judgment, and ordered the matter to proceed to damages. In its five-page order, the circuit court did not distinguish between its findings of facts and conclusions of law.

After the circuit court found in favor of the plaintiffs, a dispute between the parties arose regarding the calculation of damages relating to pre-2008 ordinances. After a hearing, the circuit court entered another order on August 31, 2022—ten months after the original order—entitled "Final Order from May 5th 2022 Hearing Regarding Enforcement of the Court's October 22nd 2021 Order." Relevant to this discussion, the court reiterated its prior conclusory findings that the City's argument based on the $624 per year amount was negated by its application and the language of the statute, that the pay reductions were made without written notification, and the reduction in pay violated the WPCA. The circuit court later declared, via order, that the August 31, 2022 Order was a "final appealable order as to liability," stayed the enforcement of the order pending appeal, and found that "a calculation of damages would be an ineffective use of the parties' monies in light of an appeal as damages would have to be recalculated after appeal regardless of any appeal's outcome."

The parties appealed, and the ICA issued a memorandum decision reversing the circuit court's determination of liability as to the longevity pay and finding that the circuit court erred by denying the defendant City's motion for summary judgment regarding that issue.[4] *White*, 2023 WL 9317831, at *5. The ICA reasoned that the plaintiffs had no "vested interest" in being paid $.25 per hour for longevity pay. *Id.* The ICA, appearing to parse out the meaning of the City ordinance without actually discussing it or its application, found that "the application of the 54-hour rate explicitly denoted in the 2008 longevity pay plan" did not "constitute[] a change or reduction in wages such as that contemplated by the WPCA" as it was "expressly provided for" in the City's Compensation Plan and the "application of that pay rate is not an affirmative change to the longevity pay plan." *Id.* at *5. The ICA also found that the City's payment of the forty-eight hour rate "in error" failed to "create a vested interest in such an overpayment to [the firefighters] in perpetuity." *Id.* The plaintiffs appealed the ICA's memorandum decision to this Court.

---

[4] I do not address the ICA's conclusions regarding the EMT pay or the standing issue. *See supra* n.1.

14

The majority now reverses the ICA, essentially reinstating the circuit court's original order granting summary judgment regarding the longevity pay issue. The majority states, with little analysis or examination of the relevant ordinance—which it relegates to a footnote—that the change to the fifty-four hour workweek did not affect the original longevity pay of $.25 an hour, as "[t]he longevity increments at issue accrued between 2008 and 2011, when the Firefighters worked a forty-eight-hour workweek and the ordinance provided that they were to be paid at the rate of $0.25 per hour for each year of city service" Mem. Dec. at 7. The majority resolves in conclusory fashion that the circuit court correctly found that the City "violated the WPCA when it changed the rate of accrued longevity increment pay without prior notice." The majority further found that the City "unilaterally modified the longevity increment policy without prior notice," which "retroactively impaired previously earned longevity increments." *Id.*

## B. A Grant of Summary Judgment to Either Party Was Error

I disagree with each of the prior decisions and would have reversed the ICA as to the longevity issue and also would have vacated and remanded the circuit court order for further factual development and analysis. Although both parties at oral argument before this Court contended that there was no material issue of fact, the plaintiff firefighters still alleged that there was no mistake in pay after the change to the fifty-four hour workweek (between 2011 and 2017) and the .$25 rate was always the correct amount, while the City argued that change was a correction that made the pay rate accurate. This glaring factual discrepancy—and the potential legal impact of the discrepancy—has not been adequately addressed by any court and is more appropriately put to a jury consistent with our standards of summary judgment.

A court should grant summary judgment "only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.'" Syl. Pt. 2, in part, *Painter*, 192 W. Va. 189, 451 S.E.2d 755 (quoting Syl. Pt. 3, *Aetna Cas. & Sur. Co.*, 148 W. Va. 160, 133 S.E.2d 770 and Syl. Pt. 1, *Andrick*, 187 W. Va. 706, 421 S.E.2d 247). Here, all the courts—the circuit court, the ICA, and the majority—have abandoned this principle to grant summary judgment in an underdeveloped case that is fully unsuitable for a grant of summary judgment to any party. Surely, the parties urge the courts to reach a resolution seeking finality and quickly contend throughout this litigation and before this Court that no material issue of fact exists. However, our judicial system should not be led astray by parties seeking a quick answer on their path to resolution and instead should remember our role to apply the Rule of Law. We have long recognized that even when both a plaintiff and a defendant seek summary judgment, their cross-motions "do[] not constitute a determination that there is no issue of fact to be tried; and both motions should be denied if there is actually a genuine issue as to a material fact." Syl. Pt. 9, *Aetna Cas. & Sur. Co.*, 148 W. Va. 160, 133 S.E.2d 770.

When a court considers whether summary judgment is appropriate, its function "is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter*, 192 W. Va. 189, 451 S.E.2d 755. As the majority points out, the WPCA seeks to protect workers and assist them in the collection of compensation "wrongly withheld." *Mullins v. Venable*, 171 W. Va. 92, 94, 297 S.E.2d 866, 869 (1982). However, based on the facts before us, whether compensation was "wrongly withheld" appears to be a question of fact that has not adequately been addressed. Although both parties claim that the facts are not in dispute, their arguments belie their claims. The City proposes that the ordinance was simply wrongly misapplied for years, which the ICA appeared to believe, while the circuit court found that the ordinance was properly applied for years. The limited findings and conclusions of law in the circuit court's order granting summary judgment to the plaintiffs constrain any appellate court's review of the circuit court's analysis. A close review of the circuit court's order does not reveal *how* the circuit court arrived at its decision, as it fails to explain what acts by the City caused a violation of the WPCA, other than noting the reduction. Likewise, the ICA, reversing the circuit court, does not adequately explain why the circuit court was wrong. Meanwhile the majority does not even grapple with whether the ordinance was correctly or wrongfully applied during the period between 2011 and the end of 2017, and just summarily concludes that the change violates the WPCA without explaining why. The majority also reaches its own factual conclusions—that the City "began providing annualized increases of $624 for longevity increment[,]" contending that the City "assessed the Firefighters' work schedules and divided their scheduled hours for each year by $624 and then added that amount to each Firefighters' hourly rate." In the majority's discussion of the change in pay, it does not refer back to the ordinance's language setting the hourly rate at $0.2222 for fifty-four hour workweeks—instead, placing the language of the ordinance in a footnote—and concludes that these were "pay reductions" rather than, as the City contends, a pay correction. Maj. op. at 3.[5]

"[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (second alteration in *Williams*).[6] Furthermore, courts should deny summary

---

[5] Although the majority relies on Syllabus Point 4 of *Boggess v. City of Charleston*, 234 W. Va. 366, 765 S.E.2d 255 (2014), which concerns when a public employer can modify an employment policy, the majority fails to examine the effect of having language regarding the fifty-four hour workweek specifically addressed in the ordinance and the Compensation Plan, and summarily concludes that the City provided no notice to the firefighters.

[6] The *Williams* Court, in recognizing that credibility determinations were for a jury, explained that when a court reviews summary judgment motions, "[i]n assessing the factual record, we must grant the nonmoving party the benefit of inferences[.]" *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995)

judgment "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Id*. (quoting *Pierce v. Ford Motor Co*., 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, (1951)). The jury, exclusively, must "weigh the evidence and resolve questions of fact when the testimony of witnesses is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 1, *Evans v. Farmer*, 148 W. Va. 142, 133 S.E.2d 710 (1963). Many questions remain regarding the facts of this case, including those relating to the interpretation of the ordinance, its effect on the longevity pay rate of firefighters, what—if any—change in interpretation of the ordinance means, the effect of the ordinance being in the City's Compensation Plan, and whether the firefighters had notice based on this information. No courts grapple with past dealings, prior interpretations, and whether the correction of an error (if there even was an error) is a violation of the WPCA. In the procedural history of this case, three levels of courts cursorily reached different conclusions regarding longevity pay: that the WPCA was violated (circuit court and this Court) or not violated (ICA). This Court should not be making factual determinations at this stage of the litigation and I disagree with the majority's resolution of this case.

The circuit court did not adequately develop or consider the underlying facts and their relation to the application of the ordinance, and related Compensation Plan, addressing longevity pay or the subsequent purported violation of the WPCA, and thus summary judgment for the plaintiffs was not appropriate at the circuit court level. Likewise, the ICA's reversal of the circuit court's summary judgment order and entry of summary judgment for the defendant City was similarly premature. *See White*, 2023 WL 9317831, at *5. The majority suffers a related infirmity, favoring conclusions over analysis and glossing over the underlying factual dispute: whether this was a "pay reduction" or, as the City contends, a "pay correction." For these reasons, I would have reversed the ICA and vacated and remanded the circuit court's order of summary judgment in favor of the plaintiffs for further factual development or trial, if necessary.

*C. Jurisdictional Concern*

While I disagree with the majority's resolution of this appeal, the ICA and the majority also consider an order on appeal that may not be proper for either the ICA or our review, without any real consideration of jurisdiction. Pursuant to West Virginia Code § 58-5-1 and Rule 54(b) of the West Virginia Rules of Civil Procedure, we generally only consider appeals that "lie[]from a final judgment." *S. Env't, Inc. v. Bell*, 244 W. Va. 465, 474, 854 S.E.2d 285, 294 (2020). This limitation "avoid[s] piecemeal review of trial court rulings which do not end litigation regarding all or some claims or parties in a case." *Vaughan v. Greater Huntington Park & Recreation Dist.*, 223 W. Va. 583, 587, 678 S.E.2d 316, 320 (2009).

A summary judgment order that "adjudicates liability but not damages is, by definition, interlocutory." *C & O Motors, Inc. v. W. Va. Paving, Inc.*, 223 W. Va. 469, 473, 677 S.E.2d 905,

909 (2009) (quoting *Hubbard v. State Farm Indem. Co.*, 213 W. Va. 542, 549 n.13, 584 S.E.2d 176, 183 n.13 (2003)). While we have allowed the appeal of orders determining liability without a damages calculation, we have repeatedly noted that those orders are "generally not immediately appealable" but may be appealed if "the determination of damages" is "ministerial." Syl. Pt. 3, in part, *C & O Motors, Inc.*, 223 W. Va. 469, 677 S.E.2d 905.[7] To avoid piecemeal litigation, we only assume jurisdiction over a case where the calculation of damages is "mechanical" because then, the case is "unlikely to produce a second appeal because only a ministerial task similar to assessing costs remains." *Id.* at 474, 677 S.E.2d at 910 (quoting *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 684 N.E.2d 72, 75 (Ohio 1997)).

Here, the circuit court issued an order alleging that the order on appeal was a final order, thus purportedly allowing the parties to appeal although damages had not yet been determined. While the circuit court found that "there is no just reason for delay" to allow the parties to appeal, the court appears to base its ruling on its finding that calculating damages may simply cost too much, as the court noted that "a calculation of damages would be an ineffective use of the parties' monies in light of an appeal as damages would have to be recalculated after appeal regardless of any appeal's outcome." However, the circuit court's costs concerns indicate that the calculation of damages, here, is not ministerial. Furthermore, the issue of calculating damages had already resulted in further litigation before the circuit court, resulting in the order on appeal. A circuit court declaring that an order is final "by itself does not satisfy the requirements of finality." *S. Env't, Inc.*, 244 W. Va. at 475, 854 S.E.2d at 295 (quoting *Vaughan*, 223 W. Va. at 588, 678 S.E.2d at 321). As I note above, the circuit court's order granting summary judgment lacked adequate analysis, and this shortcoming is further complicated by the possibility that the judgment is not, in fact, final. However, neither the ICA nor the majority grapple with whether this case should have been held for an actual final order before being considered by this Court or the ICA on appeal.

For these reasons, I respectfully dissent.

---

[7] In full, Syllabus Point 3 of *C & O Motors, Inc. v. West Virginia Paving, Inc.*, 223 W. Va. 469, 677 S.E.2d 905 (2009), provides

> An order determining liability, without a determination of damages, is a partial adjudication of a claim and is generally not immediately appealable. However, an immediate appeal from a liability judgment will be allowed if the determination of damages can be characterized as ministerial. That is, a judgment that does not determine damages is a final appealable order when the computation of damages is mechanical and unlikely to produce a second appeal because the only remaining task is ministerial, similar to assessing costs.